Argued February 9, affirmed April 9, petition for rehearing
denied May 12, 1970. Petition for review denied by
Supreme Court June 30, 1970

# THE OREGON PRINTING INDUSTRY ET AL,
### *Appellants, v.* CHAMBERLAIN ET AL,
### *Respondents.*
**467 P2d 657**

*Clifford B. Alterman,* Portland, argued the cause for appellants. With him on the briefs were Kell & Alterman and Ted E. Runstein, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

## FORT, J.

This case arises out of ORS 282.210,[1] which, in effect, grants an economic preference for "all printing, binding and stationery work for the state or any county, city, town, port district, or other political subdivision" by requiring, subject to limitations, that such work "shall be performed within the state."

The facts are not substantially disputed. As summarized from appellants' brief, they establish that on February 7, 1969, defendant Chamberlain, State Printer for Oregon, invited bids for printing Oregon Park folders for the Oregon State Highway Commission. Three bids were submitted as follows:

"1) Graphic Arts Center, a plaintiff herein, $15,300 ($51 per thousand), the printing to be done in the State of Oregon.

"2) Sweeney, Krist & Dimm, $15,720 ($52.40 per thousand), the printing to be done in the State of Oregon.

"3) Met Press Printers, $13,650 ($45.50 per thousand), the printing to be done in the State of Washington."

---

[1] "(1) Except as provided in subsection (2) of this section, all printing, binding and stationery work for the state or any county, city, town, port district, school district, or other political subdivision thereof, shall be performed within the state. All requests for bids and all contracts for such work shall so stipulate.
"(2) The work referred to in subsection (1) of this section may be performed outside the state if it is established that:
"(a) The work cannot be performed within the state;
"(b) The lowest price for which such work can be procured within the state exceeds the charge usually and customarily made to private individuals and corporations for work of similar character and quality; or
"(c) All bids for the work, or any part thereof, are excessive and not reasonably competitive." ORS 282.210.

The bids were opened at the proper time. Defendant Chamberlain determined the contract should go to the low bidder, Met Press, because "the more than 10% difference between the two lowest bids is sufficient justification for placing the order with the out-of-state firm." Subsequently defendant Ott, then Director of Department of General Services, after "a full review of this bid," upheld and approved the decision of Mr. Chamberlain on the ground that the latter's "discretion was properly exercised and was in compliance with the spirit and letter of the law." The contract was duly awarded to Met Press.

Thereafter plaintiffs filed this suit to enjoin the actions of the defendants by restraining the payment of any funds to Met Press and enjoining the defendants from accepting delivery of the folders.

The evidence at trial showed that the successful Oregon bidder during the two previous years had lost money on each year's folder contract, that the low Oregon bidder for the 1969 folder contract would have charged any private concern $16,500 for the work but charged the state only $15,300 under its bid, and that the latter estimated making only $200 "gross profit" had it been awarded the 1969 contract. It was undisputed that all three bidders had the capacity to produce the folders in accordance with the specifications.

The trial court, after hearing the testimony, found that "the defendant John R. Chamberlain, the State Printer, was acting within the scope of his authority when he accepted the bid for the work in question and the evidence substantiates the fact that he did not abuse his discretion nor the statutory guidelines as set forth in ORS 282.210," and entered its decree accordingly dismissing the complaint. Plaintiffs appeal.

Mr. Chamberlain testified:

"In this particular instance the difference in cost between the lowest and the next lowest bid is the basis on which I accepted the bid."

The amount of this difference was "slightly under 12 per cent" and represented a saving to the state of $1,650.

Appellants' reply brief states:

"Plaintiffs' position is straightforward. It presents the issue of this case: Does price differential alone satisfy the legislative guidelines as set forth in ORS 282.210? * * *"

It contends, of course, that the answer is that it does not.

ORS 282.210 was adopted in 1931. It has not been amended. Twenty years later, by Oregon Laws 1951, ch 439, the legislature adopted a general act which created the Department of Finance and Administration (now Department of General Services), and dealt exhaustively with matters of general administration of state affairs. Among its provisions were directives concerning the requirement of competitive bids for purchase of stated supplies, ORS 279.714, and the awarding of contracts based on such bids to the lowest responsible bidder, ORS 279.726. Authority over such matters was vested thereby in the Department of Finance and Administration. Sections 36 and 38 of the 1951 Act, now combined in ORS 279.714, require competitive bidding, and Section 39, now ORS 279.726, requires awarding of contracts governed by the Act to the "lowest responsible bidder taking into consideration quality, probability of performance, and in the

case of lease and rental agreements, condition and location of premises."

Whether it was the intention of the legislature by the enactment of Oregon Laws 1951, ch 439, to effect a repeal by implication of the preferential treatment accorded by it to printers, binders and stationers, for work "performed within the state of Oregon" in the 1931 Act, now ORS 282.210 to 282.230, has not been directly presented to us. In the view we take of this case it is not necessary for us to decide it. We therefore do not consider it.

Our attention has not been called to, nor have we found, any decision of our Supreme Court which construes ORS 282.210(2)(c). In *Hanson v. Mosser,* 247 Or 1, 427 P2d 97 (1967), the Supreme Court had occasion to discuss ORS 279.726 in connection with the purchase by the state of some safes and the extent of the authority of the Director of Finance and Administration thereunder. Although the case was decided on a question of pleading, the court did say at 9-10:

> "In *Inge v. Board of Public Works of Mobile,* 135 Ala 187, 198-199, 33 So 678, 681, 93 Am St Rep 20 (1902), the Supreme Court of Alabama in a well-reasoned opinion stated:
>
>> " '* * * "The determination of who is the lowest bidder, with the qualification of responsibility, rests not in the exercise of an arbitrary, unlimited discretion of the officer or board awarding the contract, but upon the exercise of a *bona fide* judgment, based upon facts tending reasonably to the support of such determination." * * * In the absence of fraud or gross abuse, the courts will not interfere with the exercise of discretion by administrative boards or officers in their determination of who is the lowest responsible bidder. * * *' "

It then stated at 12:

> "* * * If the evidence shows, however, that the award was made in a legitimate exercise of the broad discretion of which the Director of the Department of Finance and Administration is possessed, his act would be fully authorized by the state * * *."

The statute clearly allows the awarding of a bid to one who will not perform the work in the state of Oregon when the bids "are excessive and not reasonably competitive." ORS 282.210(2)(c).

The statute provides no definition of "excessive" nor establishes guidelines as to what is meant by "reasonably competitive." Clearly then the Director of the Department of General Services here, too, is required to exercise the "broad discretion" requisite to determination of whether a bid, which, as here, is not the low bid, is "excessive and not reasonably competitive."

Where, as here, such bid exceeds by approximately 12 per cent that of the lowest bidder, we cannot say that the discretion vested in the Director has been abused in concluding that it was excessive.

Finally, appellants contend that even though Graphic Arts' bid was excessive, this does not mean it was not reasonably competitive. It may be true, as appellants contend, that a bid found to be excessive may be reasonably competitive within the intendment of the statute under special circumstances, such as, for example, those alluded to in ORS 282.230. It does not, however, follow that it is an abuse of discretion to conclude that a price excessive by more than ten per cent is, standing alone, not a reasonably competitive price. Abuse of discretion is never presumed. On the

contrary, ORS 41.360(15) informs us that the pre-
sumption is that "official duty has been regularly per-
formed."

Plaintiffs do not claim, and the record is devoid
of showing, circumstances, whether those described in
ORS 282.230 or otherwise, which establish an abuse of
discretion by the defendants in concluding that since
plaintiff's bid was excessive it likewise was not rea-
sonably competitive.

We think the trial court correctly concluded that
the defendants did not abuse the discretion vested in
them by the statute in question.

The judgment is affirmed.