Submitted on record and briefs May 31, affirmed November 23, 1983, reconsideration
denied March 9, petition for review denied April 24, 1984 (297 Or 82)

# PARSONS,
*Respondent,*

*v.*

# HENRY et ux,
*Appellants,*

(35798; CA A27603)

672 P2d 717

Gretchen R. Morris and Fenner, Barnhisel, Morris & Willis, Corvallis, filed the brief for appellants.

Robert C. McCann, Jr. and Donald P. Reiling, P.C., Albany, filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff, a general contractor, brought this action to foreclose a construction lien on defendants' home. The trial court held that the lien was invalid, because plaintiff was not a registered builder at the time he filed the lien, ORS 701.055 *et seq,* but allowed plaintiff to proceed in *quantum meruit.* Judgment was entered for plaintiff for $16,006.

On appeal, defendants contend that the trial court erred (1) in failing to dismiss plaintiff's complaint, because he was not a registered builder at the time he filed the action, relying on the version of ORS 701.065 in effect at that time; (2) in granting plaintiff's motion for summary judgment on defendants' counterclaim for racial discrimination under the Public Accommodations Act, ORS 30.670 *et seq;* (3) in failing to award them attorney fees and in awarding costs to plaintiff; and (4) in awarding prejudgment interest to plaintiff. We affirm the judgment in all respects.

In October, 1977, the parties began negotiating a contract for the construction of defendants' home and, after plaintiff submitted several bids, they entered into a contract in February, 1978. Construction began in May, 1978, and continued intermittently until December, 1978, when a dispute arose over whether the work was being done promptly or properly. Plaintiff was registered with the Builders Board at the time he bid on and entered into the contract, but his registration expired in October, 1978, prior to the filing of his complaint in August, 1979.

ORS chapter 701, enacted in 1971,[1] is essentially a consumer Act designed primarily to protect the public from irresponsible builders. *Hellbusch v. Rheinholdt,* 275 Or 307, 313, 550 P2d 1199 (1976); *Roelle v. Griffin,* 59 Or App 434, 437-38, 651 P2d 147 (1982); *Seaton v. Builders Board,* 29 Or App 467, 470, 564 P2d 710 (1977); *Robinson v. Builders Board,* 20 Or App 340, 343, 531 P2d 752 (1975). A principal protection is the requirement that a builder be registered with the Builders Board prior to the time he bids on or enters into a building contract, ORS 701.055, and prerequisites to obtaining a certificate of registration are posting of a $5,000 surety

---

[1] Or Laws 1971, ch 740.

bond and furnishing evidence of public liability and property damage insurance. ORS 701.085; ORS 701.105.

To enforce those provisions, ORS 701.065, as originally enacted, denied a builder the right to bring or maintain an action for compensation for the performance of any work or for breach of any building contract unless he was registered "at the time he bid or entered into" the contract — in other words, unless he had complied with ORS 701.055. Although the essential registration requirements of the act have remained the same since their enactment in 1971, the provisions for enforcing them have undergone two erratic changes in 1975 and in 1979.

The 1975 amendment to ORS 701.065[2] provided that a builder "may not file a lien or bring or maintain" an action for compensation or for breach of a building contract unless he was registered "at the time he filed the lien or commenced the suit or action." Subsection (2) of the 1975 amendment went on to provide that if the builder was not registered at the time he bid or entered into the contract, but registered before filing the lien or action and recovered a money judgment in his suit or action, he was required to pay 25 percent of his recovery to the Builders Board. Former ORS 701.065. In *Mahana v. Miller,* 281 Or 77, 573 P2d 1238 (1978), the builder was sued for breach of a contract entered into in 1975, prior to the effective date of the 1975 amendment. He was registered at the time the action was commenced and filed a counterclaim on which he recovered a verdict. The trial court granted the plaintiff's motion for a new trial on the ground that the 1975 amendment could apply only to contracts entered into after its effective date.

On appeal, the Supreme Court reversed, holding that the 1975 amendment, being remedial, should be applied to a claim litigated after its effective date. The court said:

"Perhaps another way to state the same point is that when a provision like ORS 701.065 specifically operates upon the builder's rights when he seeks a remedy for a failed transaction, the application of the 1975 amendment to this 1976 action is not retroactive at all. It might be called retroactive or retrospective if one attributed to the original legislation a

---

[2] Or Laws 1975, ch 654, § 1.

purpose to entitle the customers of unregistered builders to free construction services, rather than merely to enforce the registration requirement. But it appears from the text and the legislative history that the disqualification of unregistered builders was only an enforcement device, and that it was amended in 1975 precisely to permit a builder to avoid a forfeiture by registering before he filed his lien or suit. We see no reason to doubt that the legislature meant this change to apply to all cases in which such a remedy is sought after the effective date of the amendment." 281 Or at 80-81.

The 1979 amendment[3] is substantially the same as the original 1971 version of ORS 701.065. It provides:

"A builder may not file a lien or bring or maintain in any court of this state a suit or action for compensation for the performance of any work or for the breach of any contract which is subject to this chapter, unless he was registered under this chapter at the time he bid or entered into the contract for performance of the work."

In *Kolodejchuk v. Lucier,* 52 Or App 981, 630 P2d 889 (1981), the builder was not registered at the time of contracting in 1978, but was registered prior to filing his action in 1979. Although the action was filed prior to the effective date of the 1979 amendment, trial did not occur until after the amendment took effect. The question was whether that amendment precluded the builder from "maintaining" the action, even though he was entitled to file it. We concluded that the legislature's use of the word "maintain" indicated its intention that the statute be applied to pending actions. Accordingly, we held that the builder could not maintain the action. *Mahana v. Miller, supra,* tells us that the purpose of ORS 701.065 from its inception has been to enforce the registration requirements provided in ORS 701.055, not to give builders' customers free construction services. Even the 1975 version of the statute imposed a penalty of 25 percent of any judgment recovered by a builder who had not registered before contracting but who had registered before filing his action. Here, plaintiff had complied with the registration requirements of ORS 701.055 and was entitled to file and maintain his *quantum meruit* claim after the effective date of the 1979 amendment. *Kolodejchuk* tells us that the legislature intended that

---

[3] Or Laws 1979, ch 874, § 1.

amendment to apply to pending actions and, because *Mahana* also applied the 1975 amendment to a case litigated after its effective date when it permitted a remedy not available under the 1971 statute, we conclude that the legislature intended to authorize a builder who had complied with the registration requirements to maintain an action filed after the enactment but before the effective date of the 1979 amendment.

■    We see no persuasive reason not to permit plaintiff to do so. The 1979 amendment reverts substantially to the original 1971 version of ORS 701.065 and provides greater protection to the consumer than did the intervening 1975 amendment, which authorized builders who had not complied with the registration requirements of ORS 701.055 to register immediately before filing an action, the only penalty being the payment of 25 percent of his judgment to the Builders Board. It is apparent that the legislature considered the original enforcement provisions more adequate and so reverted to them in 1979. Plaintiff here has complied with those require-ments, and the enforcement policy will be better served by applying it, as we did in *Kolodejchuk,* to a pending action. Furthermore, plaintiff could have dismissed and re-filed his *quantum meruit*[4] claim after the effective date. It would be a triumph of form over substance to require that he go through that procedure when the trial did not occur until after the effective date.

■    Second, defendants assign error to the granting of plaintiff's motion for summary judgment on their coun-terclaim alleging racial discrimination under the Public Accommodations Act. ORS 30.670 *et seq.* The counterclaim alleges that plaintiff failed to provide defendants with goods and services equal to those he provided others because of defendants' race, as a result of which they were denied the "full and equal accommodations, advantages, facilities, and privileges of any place of public accommodation" within the meaning of ORS 30.670.[5] ORS 30.675(1) provides:

---

[4] Plaintiff's lien claim is not involved here.

[5] ORS 30.670 provides:

"All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, without any distinction, discrimination or restriction on account of race, religion, sex, marital status, color or national origin."

"A place of public accommodation, subject to the exclusion in subsection (2) of this section, means any place or service offering to the public accommodations, advantages, facilities or privileges whether in the nature of goods, services, lodgings, amusements or otherwise."

Although the Act is to be construed broadly, *see, e.g., Schwenk v. Boy Scouts of America,* 275 Or 327, 551 P2d 465 (1976); *Graham v. Kold Kist Beverage Ice, Inc.,* 43 Or App 1037, 607 P2d 759 (1979), we do not believe it was intended to apply here.

■     Plaintiff is a custom builder who constructs homes for those with whom he contracts after a bid process or negotation. There is no evidence that he advertises his services to the general public. Here, defendants heard of plaintiff from another person and contacted him to discuss the design and construction of a home on defendants' lot. After bidding and negotiation, a contract was signed, by the terms of which plaintiff was to build a home for defendants for a total price of $68,274, "subject to additions and deductions"; of the price, plaintiff was to be paid no more than $6,000 for his "overhead and fee." On those facts, even if some builders might be subject to the act, plaintiff cannot be said to have "offered his services to the public" within the meaning of ORS 30.675(1). *See Graham v. Kold Kist Beverage Ice, Inc., supra.*[6] If plaintiff did not perform his part of the contract, defendants' claim would be for breach of contract (which they asserted here as a counterclaim), not for violation of the act.

■■     Defendants' third assignment is that the trial court erred in refusing to award them attorney fees and in awarding costs to plaintiff. Because plaintiff's suit to foreclose the lien failed, clearly he is not entitled to attorney fees under ORS 87.060(4). Defendants would be entitled to attorney fees only if they successfully defended the lien foreclosure *and* prevailed in the remaining action at law. ORS 87.060(4); *Betz Construction v. Peterson,* 47 Or App 333, 337-38, 614 P2d 1184, *rev den* 289 Or 677 (1980); *see R & R Excavating Co. Inc., v. Olive Tree*

---

[6] In *Graham v. Kold Kist Beverage Ice, Inc., supra,* we pointed out that the primary subjects of discussion before legislative committees considering the act were restaurants, hotels, barbershops, retail stores "and other businesses which provide goods or services to members of the *general public* as consumers." 43 Or App at 1042. (Emphasis supplied.)

*Homes,* 62 Or App 406, 660 P2d 1092 (1983). Here, plaintiff is the prevailing party; he recovered a net judgment of $16,006 against defendants. Under ORCP 68B, costs are allowed to the prevailing party "unless the court otherwise directs." In other words, the trial court, in its discretion, could have disallowed plaintiff's costs, but it did not do so. There is no error.

■     Finally, defendants contend that the court erred in awarding plaintiff prejudgment interest. They point out, correctly, that before prejudgment interest may be awarded (1) the amount upon which interest is sought must be ascertainable or readily ascertainable by simple computation or by reference to generally recognized standards such as market price, and (2) the time from which interest will run must be readily ascertainable. *Carlson v. Blumenstein,* 54 Or App 380, 384, 635 P2d 380 (1981), *modified* 293 Or 494, 651 P2d 710 (1982).

■■     The trial court determined that the amount owing to plaintiff was $16,006. That figure was arrived at by simply adding and subtracting the appropriate figures from the contract price. The fact that the amount owed was not finally ascertained until issues of fact had been resolved does not preclude a claim for prejudgment interest. *Laro Lumber Company v. Patrick,* 52 Or App 1035, 1041, 630 P2d 400 (1981).

The date from which interest accrues was determined to be the undisputed date when defendants took possession by moving into the dwelling. In *City of Portland v. Hoffman Construction Co.,* 286 Or 789, 805, 596 P2d 1305 (1979), the court stated that, when a party recovers on a *quantum meruit* theory, he is entitled to interest from the date the contract was wrongfully terminated. *Hill v. Wilson,* 123 Or 193, 199, 261 P 422 (1927), held that, in a *quantum meruit* recovery for services, payment is due when the services are rendered. In the present action, the trial court concluded that the latest date that payment could be said to be due was the date defendants moved into their home. Accordingly, it allowed interest from that date. There was no error.

Affirmed.