Argued and submitted July 22, affirmed on appeal and cross-appeal, December 4, 1996, petition for review denied March 18, 1997 (325 Or 80)

SCHLUMBERGER TECHNOLOGIES, INC.,
a Delaware corporation,
*Appellant - Cross-Respondent,*

*v.*

TRI-COUNTY METROPOLITAN TRANSPORTATION
DISTRICT OF OREGON (TRI-MET),
an Oregon mass transit district,
*Respondent - Cross-Appellant,*

*and*

SCHEIDT & BACHMANN, GmbH,
*Intervenor - Respondent.*

(9505-03475; CA A89594)

929 P2d 331

Garry R. Boehlert argued the cause for appellant - cross-respondent. With him on the briefs were Douglas C. Proxmire and Watt, Tieder & Hoffar, L.L.P. of McLean, Virginia, and Timothy J. Sercombe, Douglas C. Blomgren, James Herald and Preston, Gates & Ellis.

Richard E. Alexander argued the cause for respondent - cross-appellant Tri-County Metropolitan Transportation District of Oregon. With him on the briefs were Charles F. Adams, Eric Grasberger and Stoel Rives LLP.

Lanny J. Davis argued the cause for intervenor-respondent Scheidt & Bachman, GmbH. With him on the brief were Timothy B. Mills and Patton Boggs, L.L.P. of Washington, D.C. and Richard S. Pope and Newcomb, Sabin, Schwartz & Landsverk.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

.

## WARREN, P. J.

Plaintiff Schlumberger Technologies, Inc. (Schlumberger), appeals from a summary judgment dismissing its claims under ORS 279.067 against defendant Tri-County Metropolitan Transportation District (Tri-Met).[1] Schlumberger alleged that Tri-Met improperly awarded a contract for the creation of a fare collection system to intervenor Scheidt & Bachmann, GmbH (S&B). Tri-Met cross-appeals from the trial court's failure to award it attorney fees under ORS 279.067(4). We affirm.

As part of the Westside Light Rail project in the Portland metropolitan area, Tri-Met issued an Invitation for Bids (IFB) for the fare collection system to be installed at stations along the light rail route.[2] The IFB stated that the system

> "consists of ticket vending machines (TVMs), ticket validators (Validators), a Central Data Collection and Information System (CDCIS), related data communication networks, and the spare parts, tools, test equipment, documentation, training, technical assistance, and warranty required as part of this Contract.

> "The fare collection equipment specified herein shall be used on Tri-Met's Light Rail Transit (LRT) and may be used in conjunction with other Tri-Met transit services in the future.

> "The TVMs are intended for the purpose of selling passes to Tri-Met's patrons by coins, bills, credit cards, and/or debit

---

[1] Schlumberger argues that the trial court should have granted its motions for summary judgment. It does not assert that there are issues of fact for trial.

[2] Schlumberger's brief does not provide the "concise summary, without argument, of all of the facts of the case material to determination of the appeal" that ORAP 5.40(8) requires. Rather, its statement of facts is argumentative and incomplete, stating, for example, that a particular circumstance is "conclusive evidence that S&B was not a responsible bidder," that "it is clear that Tri-Met made a conscious decision to improperly 'decide' Schlumberger's protest and to wrongfully award to S&B in violation of clear and well established law," that Tri-Met attempted "to prevent a full investigation and accurate inquiry of the case" and to "mislead" an official of the Construction Contractors Board, and that Tri-Met made "shocking and intimidating statements" to the Board. Assuming that those statements are appropriate argument, they have no place in a statement of facts. Rather than assisting us in understanding the case and the parties' arguments, Schlumberger's statement of facts made those tasks more difficult.

cards. Validators shall provide the means to imprint data such as the time and date on inserted ticket [*sic*] to provide the means for canceling a ticket.

"The Contractor shall provide a Fare Collection System which is service-proven as defined herein. The Contractor shall provide materials that are new and free of defects and which conform to the requirements of this Technical Specification."

In compliance with ORS 279.025(2)(k), the IFB contained a notice that "No bid for a construction Contract shall be received or considered by Tri-Met unless the bidder is registered with the Construction Contractor's [*sic*] Board as required by ORS 671.530 [*sic*]."[3] The bid form contained a line for the bidder to provide its registration number.

S&B was not registered with the Construction Contractors Board (the Board). It was unsure whether the IFB involved a construction contract and thus whether it needed to become registered before submitting its bid. It therefore asked Tri-Met about the registration requirement. After consulting with an official at the Board, Tri-Met responded with a letter to all prospective bidders in which it stated, "Per the Construction Contractor's [*sic*] Board, the registration of the installer would satisfy the requirement. If there is no subcontract with the installer at this time, registration must occur prior to the installer signing a subcontract." Relying on that advice, S&B did not register with the Board. Instead, it placed the registration number of its intended installation subcontractor on the line in the bid form that called for S&B's registration number.

S&B's bid was considerably lower than the other two bids; Schlumberger's was the second lowest. Shortly after the bid opening, Schlumberger filed a protest, which Tri-Met denied. Schlumberger then filed this proceeding, seeking to prevent Tri-Met from awarding the contract to S&B, which intervened as a defendant. The trial court denied Schlumberger's motion for a temporary restraining order or a preliminary injunction, and Tri-Met then awarded the contract to

---

[3] ORS 671.530 actually involves registration as a landscape contractor rather than as a construction contractor.

S&B. The court thereafter granted summary judgment to defendants.

■    Schlumberger's primary argument on appeal is that S&B's bid did not meet the requirements of the IFB, because S&B was not a registered contractor. Under ORS 279.067, we determine whether Tri-Met violated ORS 279.011 to ORS 279.063 when it determined that S&B was the winning bidder and when it awarded the contract to S&B. ORS 279.067(1). Tri-Met's statutory duty was to award the contract to the "lowest responsible bidder." ORS 279.029(1). Tri-Met therefore had to decide which entity was "the lowest bidder who has *substantially complied* with all prescribed public bidding procedures and requirements and who has not been disqualified by the public contracting agency under ORS 279.037." ORS 279.029(6)(a) (emphasis supplied). The issue, thus, is whether Tri-Met correctly determined that S&B substantially complied with the statutes and the IFB when it provided the registration number of its proposed installation contractor, who was registered, although S&B itself was not.

Under ORS 701.055(1), registration is a requirement for submitting a bid to perform work as a contractor. S&B was not registered, and if the IFB contemplated a construction contract, S&B's action does not literally comply with ORS 279.025(2)(k). ORS 279.029, however, does not necessarily require Tri-met to reject a bid that does not literally comply with all procedures and requirements. Rather, it permits Tri-Met to determine that S&B substantially complied with the statute. If S&B did substantially comply, Tri-Met did not violate ORS 279.011 to ORS 279.063 when it awarded the contract to S&B.

The Supreme Court has defined "substantial compliance" with statutory requirements as " 'compliance in respect to the essential matters necessary to assure every reasonable objective of the statute.' " *Rogers v. Roberts*, 300 Or 687, 691, 717 P2d 620 (1986), *quoting Sabatini v. Jayhawk Construction Co., Inc.*, 214 Kan 408, 411, 520 P2d 1230 (1974). It has also noted that " '[w]hat constitutes substantial compliance with a statute is a matter depending on the facts of each particular case.' " 300 Or at 692, *quoting In re Santore*, 28 Wash App 319, 327, 623 P2d 702 (1981). For the following reasons,

under the facts of *this* particular case Tri-Met correctly determined that S&B had substantially complied with the registration requirement.

ORS 701.005(2) defines a "contractor" who must register with the Board to include a person who, for purposes that clearly apply here,

"submits a bid to construct, alter, repair, add to, subtract from, improve, inspect, move, wreck or demolish, for another, any building, highway, road, railroad, excavation or other structure, project, development or improvement attached to real estate or to do any part thereof."

However, ORS 701.010(1) provides that a person "who is constructing, altering, improving or repairing personal property" is exempt from registration as a construction contractor. The first question, thus, is the extent to which the IFB contemplated work that required a registered contractor.

The work under the IFB involves designing a system for collecting fares and issuing and validating tickets, manufacturing the equipment for that system, and installing the equipment at various light rail stops. The equipment itself is personal property, at least until it is installed, and its design and manufacture do not require registration.[4] Thus, as the parties implicitly recognize in their briefs and as an official of the Board assumed in analyzing the issues while S&B's bid was under protest, only the actual installation of the equipment could be work that required a registered contractor. In both Schlumberger's and S&B's bids, installation involved less than two percent of the total amount of the bid.

Only a small portion of the work under the IFB, thus, might require a registered contractor.[5] When S&B submitted its bid, it followed Tri-Met's instructions and provided the registration number of the registered construction contractor that it intended to use for the installation. In the context of S&B's question about registration and Tri-Met's

---

[4] In addition, Tri-Met and S&B state in their brief that the equipment will be manufactured outside of Oregon; Schlumberger does not challenge that statement.

[5] We do not need to decide whether installing the fare collection system will constitute "[i]nstallation or repair of stand-alone industrial equipment," which does not require a registered contractor. OAR 812-02-000(28).

answer, that action did not mislead Tri-Met as to whether S&B claimed to be registered itself. S&B did essentially what Tri-Met told it and the other bidders to do. It thereby assured Tri-Met that a registered contractor would perform the small portion of the contract work that might require registration. S&B thereby satisfied the purposes of both ORS 279.025-(2)(k) and ORS 701.055(1) and substantially complied with the legal requirements for the bid.[6]

■  Schlumberger next argues that Tri-Met violated the public contracting statutes when it accepted S&B's bid because the bill acceptor[7] that S&B proposed to use was incapable of satisfying the technical requirements that Tri-Met established in the IFB. Tri-Met and S&B respond that Tri-Met prepared the IFB so that either the acceptor that S&B proposed to use or the one that Schlumberger proposed to use would satisfy the requirements. They also point to evidence that the company that made S&B's acceptor was in the process of revising it, that the revised acceptor would be ready before it was time to install the ticket vending machines, and that it would then fully comply with the IFB's requirements. Finally, they urge that we follow a distinction in federal contracting law between bid responsiveness and bidder responsibility.[8]

Our authority to review Tri-Met's actions in this case comes from ORS 279.067 rather than from federal law. Federal distinctions, thus, are helpful only to the degree that they are consistent with Oregon statutes and cases. Under

---

[6] S&B's actions are distinguishable from those of the petitioner in *Remodeling Consult. v. Builders Bd.*, 19 Or App 794, 528 P2d 1373 (1974), *rev den* (1975). In that case, the petitioner arranged for contractors in the various trades to do the work on each project. The projects were unquestionably construction work, and the plaintiff functioned like a general contractor on a construction job. In this case, any construction work was incidental to the contract, the great bulk of which involved nonconstruction work.

[7] A bill acceptor is a device that scans currency to determine its denomination and whether it is genuine.

[8] Tri-Met and S&B describe the distinction as follows:

"Responsiveness concerns whether a bidder has unequivocally offered to provide the supplies or services in conformity with all material terms and conditions of the invitation for bids. A bid must be responsive to be considered for award. By contrast, responsibility refers to a bidder's apparent ability and capacity to perform. Determinations of responsibility are up to the contracting agency and generally can be rejected only for fraud or bad faith." (Citations omitted.)

ORS 279.067(1), we may require compliance with or prevent a violation of ORS 279.011 to ORS 279.063. In this case, plaintiff asserts that Tri-Met violated those statutes in two ways: First, that Tri-Met awarded the contract to S&B when that entity was not a legally qualified bidder. Whether S&B was legally qualified to make a bid is a question of law that we review in the same way that we review other questions of law. We have resolved it against plaintiff's contentions. Second, plaintiff argues that the bill acceptor did not meet the technical requirements of the IFB. As we discuss below, under the relevant cases we review that argument in a different fashion. The federal distinction between responsiveness and responsibility does not help us to decide either the nature of our review or the correct answer to the issues.

■    We turn to the issue of whether the bill acceptor meets the IFB criteria. This issue does not involve S&B's legal capacity to bid; rather, it involves whether its bid shows that it will be able to perform the requirements of the contract. In this context, it is not our role to evaluate the wisdom of Tri-Met's determination that S&B will be able to perform.

■    Deciding whether a bid meets the technical terms of the IFB requires an exercise of judgment that is within the scope of Tri-Met's duties and may require its specific expertise. We determine whether Tri-Met properly exercised its discretion, not whether we agree with its decision. *See Hanson v. Mosser*, 247 Or 1, 9-10, 427 P2d 97 (1967); *Oregon Printing Ind. v. Chamberlain*, 2 Or App 401, 405-07, 467 P2d 657, *rev den* (1970). Tri-Met had information that, before it would be time to install the acceptor that S&B proposed to provide, that acceptor would meet Tri-Met's technical standards. In addition, whether or not that acceptor met the standards, S&B would be obligated under the contract to provide an acceptor that did. In these circumstances, we cannot say that Tri-Met abused its discretion in deciding that S&B had complied with the technical requirements for a bid. As a result, we cannot say that Tri-Met violated ORS 279.011 to ORS 279.063 in determining that S&B was the lowest responsible bidder and issuing the contract to it.

On its cross-appeal, Tri-Met assigns error to the trial court's failure to award it attorney fees and to its refusal to make findings to support that denial. ORS 279.067(4) provides that, in an action under ORS 279.067(1), the court "may order payment of reasonable attorney fees" at trial and on appeal to a successful party. By its terms, the statute contemplates that the court will exercise its discretion in deciding whether to make such an award. It does not contain any criteria for the exercise of that discretion, and Tri-Met does not refer us to any other source that does so.[9] In this state of the record, we cannot say that the trial court erred in denying attorney fees. The remaining question is whether it erred in failing to make appropriate findings, thus creating a more complete record for our review.

Tri-Met points out that we require a court that denies a request for fees under ORS 20.105(1) or ORCP 17 to make findings sufficient for appellate review. *See Polizos v. Skoro*, 129 Or App 51, 55-56, 877 P2d 662, *rev den* 320 Or 271 (1994); *Sheehan and Sheehan*, 123 Or App 449, 452, 860 P2d 835 (1993). ORS 20.105(1) provides for attorney fees against a party that wilfully disobeys a court order or that acts in bad faith, wantonly, or solely for oppressive reasons. ORCP 17 provides for sanctions, including attorney fees, against a party or attorney for signing a pleading, motion, or other paper that is frivolous or filed for an improper purpose.[10]

Both *Polizos* and *Sheehan*, thus, involve statutes that create express criteria on which the trial court must rule in deciding whether to award fees. Findings are necessary in part for appellate review of whether the factual predicates for the imposition of attorney fees exist. In contrast, ORS 279.067(4) does not establish any explicit or implicit criteria for the trial court to consider, and thus there is less need for

---

[9] For instance, relying on comparable federal law, we have construed the apparently discretionary language of ORS 659.121(1) to require an award of attorney fees to a prevailing plaintiff but to limit an award to a prevailing defendant to situations in which the plaintiff's claim was frivolous, unreasonable, or without foundation. *Robinson v. School District No. 1*, 92 Or App 627, 631-32, 759 P2d 1116 (1988); *Payne v. American-Strevell, Inc.*, 65 Or App 265, 670 P2d 1065 (1983).

[10] This statement summarizes the thrust of ORCP 17, rather than providing a definitive statement of its criteria. The 1995 legislature significantly modified the rule but retained the requirement that sanctions be the result of some misconduct or overreaching. Or Laws 1995, ch 618, § 4.

explicit findings and conclusions to aid appellate review. To the contrary, ORCP 68 C(4)(c)(ii) presently provides that a court is not required to issue findings of fact when it decides a disputed request for attorney fees brought under the rule.[11] In order to recover attorney fees in this case, Tri-Met would have had to follow the procedures of ORCP 68 C, if the court had not foreclosed that action by announcing its decision not to award fees in its letter opinion on the merits. The rule, nevertheless, establishes that the trial court did not err when it failed to make findings or conclusions to explain its decision on attorney fees.

Affirmed on appeal and cross-appeal.

---

[11] The Council on Court Procedures is considering proposals to amend the rule to require findings in certain circumstances. *See* 1996 Or App Ct Adv Sh No. 21 at A-19 (October 19, 1996).