Argued and submitted July 12, 1999, reversed and remanded in part; otherwise affirmed March 15, 2000

## PARTHENON CONSTRUCTION & DESIGN, INC., an Oregon corporation, *Appellant,*

*v.*

## Douglas A. NEUMAN and Mountain Park Development, LLC, Douglas A. Neuman and Rebecca R. Neuman, Trustees of the Neuman Living Trust, *Respondents.*

## Douglas A. NEUMAN and Mountain Park Development, LLC, Douglas A. Neuman and Rebecca R. Neuman, Trustees of the Neuman Living Trust, *Third-Party Plaintiffs - Respondents,*

*v.*

## Dallas E. PAGE and Jodi Page, *Third-Party Defendants - Appellants.*

(97-1276-E-3; CA A103698)

999 P2d 1169

John R. Hanson argued the cause for appellant. With him on the briefs was Werdell & Hanson.

David V. Gilstrap argued the cause for respondents. With him on the brief was Davis, Gilstrap, Hearn & Welty.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON. J.

De Muniz, P. J., concurring.

## HASELTON, J.

Plaintiff Parthenon Construction & Design, Inc., appeals. Plaintiff assigns error to the trial court's allowance of summary judgment against plaintiff's claims seeking (1) payment or lien foreclosure for construction-related services; and (2) specific performance of an oral agreement to convey an interest in real property.[1] In particular, plaintiff contends that the court erred in determining that, under ORS 701.065 (1995), plaintiff's failure to remain "continuously registered" with the Construction Contractors Board (CCB) barred plaintiff's claims for breach of contract or lien foreclosure based on its work. Plaintiff further argues that the court erred in concluding that the statute of frauds, ORS 41.580, barred plaintiff's specific performance claim. We conclude that the trial court properly dismissed the construction services-related claims but erred in dismissing plaintiff's specific performance claim. Accordingly, we reverse and remand the dismissal of plaintiff's seventh claim for relief but otherwise affirm.

We begin with the dismissal of the claims arising from plaintiff's performance of construction services for defendants. The material facts are uncontroverted.[2] Plaintiff is engaged in the business of building homes and improvements for residential developments. As a construction contractor, plaintiff was, at all material times, subject to ORS 701.055, which requires that contractors maintain a current, valid certificate of registration issued by the CCB.[3] Plaintiff's

---

[1] Plaintiff alleged 15 claims for relief. Claims 1 through 6 sought payment for construction services that plaintiff allegedly performed for defendants, and claims 8 through 15 sought to foreclose liens based on defendants' alleged nonpayment. Claim 7 sought specific performance of the alleged oral agreement to convey an interest in real property. That claim is based on a transaction entirely distinct from, and unrelated to, the other 14 claims.

Plaintiff does not assign error to the allowance of summary judgment against the fifth and sixth claims. Accordingly, we do not address the propriety of the trial court's dismissal of those claims.

[2] Because, as noted, plaintiff's claim for specific performance is based on a completely unrelated transaction, we set out the facts material to that transaction separately in our discussion of the dismissal of that claim. *See* 166 Or App at 181-83.

[3] ORS 701.055(1) provides, in part, that no person shall "undertake, offer to undertake, or submit a bid to do work unless that person has a current valid certificate of registration issued by the Construction Contractors Board."

sole shareholders, Dallas and Jodi Page, initially registered the corporation with the CCB in 1991.

In July 1994, plaintiff and defendant Mountain Park Development, LLC (Mt. Park), entered into an agreement relating to the construction of a subdivision. Under that agreement, plaintiff was to be paid a fixed price for construction of the subdivision improvements such as roads and utilities. The agreement also provided that, if both parties agreed, then plaintiff would also construct some or all of the houses in the subdivision. The contract terms specified the division of profits from the sale of any houses plaintiff might build.

Plaintiff began construction under the contract in July 1994 and continued to perform work thereunder until October 1996. In October 1996, a dispute arose between plaintiff and Mt. Park over payments allegedly owed to plaintiff for its labor and supervision as general contractor for the subdivision improvements. At about the same time, a dispute also arose relating to payments Mt. Park allegedly owed plaintiff for several of the houses it built. In December 1996, plaintiff filed several construction liens against those properties.

As noted, plaintiff was subject to the contractor registration requirements of ORS 701.055. At the time plaintiff entered into the contract with Mt. Park in July 1994, plaintiff was registered. However, thereafter, the CCB twice terminated plaintiff's registration because plaintiff's liability insurance coverage had lapsed. Specifically, plaintiff was unregistered from September 21, 1994, through October 7, 1994, and again from September 15, 1995, through November 3, 1995. In each instance, plaintiff's insurer notified the CCB about the lapse in coverage; the CCB then notified plaintiff that it would terminate its registration if plaintiff failed to timely reinstate its coverage; and, when plaintiff failed to do so, the CCB terminated plaintiff's registration until plaintiff provided proof of coverage.

In March 1997, plaintiff filed this action. Plaintiff's operative first amended complaint alleged 15 claims for relief. The dismissal of 12 of those claims is the subject of the first assignment of error. Plaintiff's first claim alleged breach

of contract against defendant Mt. Park and its principal, defendant Douglas Neuman, seeking payment for plaintiff's construction of houses on 28 of the lots in the subdivision. In its second through fourth claims, plaintiff alleged breach of contract against the same defendants, seeking payment for plaintiff's supervision as general contractor of the subdivision improvements for Phase I (second claim), Phase II (third claim), and Phase III (fourth claim) of the development. In its eighth through fifteenth claims, plaintiff sought to foreclose construction liens that it had filed on eight of 28 lots upon which it had constructed homes. Defendants answered, alleging, *inter alia*, nine affirmative defenses, six counterclaims, and a third-party complaint against the Pages.[4]

In June 1998, defendants moved for summary judgment against plaintiff's first through fourth and eighth through fifteenth claims. Defendants contended that, under ORS 701.065 (1995), plaintiff's noncompliance with the registration requirements of ORS 701.055—*i.e.*, plaintiff's failure to remain "continuously registered with the Construction Contractors Board at all times during the course of [its] employment as a general contractor of the subdivision"—precluded any claim based on its performance of the work. In particular, defendants asserted that the two lapses in plaintiff's registration—from September 21 through October 7, 1994, and September 15 through November 3, 1995—precluded *any* recovery for work performed on the project, including work performed during periods when plaintiff was registered. The trial court agreed and entered an ORCP 67 B judgment for defendants against those claims.

On appeal, plaintiff contends that the trial court erred in its application of ORS 701.065 (1995). That statute provided, in part:

"(1) A contractor may not file a lien, file a claim with the board or bring or maintain in any court of this state a suit or action for compensation for the performance of any work or for the breach of any contract for work which is subject to this chapter, unless the contractor was:

---

[1] Except as specifically noted, the disposition of those affirmative defenses and counterclaims, and the third-party complaint, is immaterial to this appeal.

"(a) Registered under this chapter at the time the contractor bid or entered into the contract for performance of the work; and

"(b) Registered continuously while performing the work for which compensation is sought.

"(2) If the court determines that the contractor was not aware of the requirement that the contractor be registered, a court may choose not to apply subsection (1) of this section if the court finds that to do so would result in a substantial injustice to the unregistered contractor."[5]

In challenging the trial court's determination that plaintiff's failure to be "registered continuously" precludes any lien or action based on the work, plaintiff makes two principal arguments. First, plaintiff argues that, under ORS 701.065 (1995), where a contractor was registered at the time it entered into the contract, any subsequent lapse of registration bars recovery only for work performed during the period of nonregistration. Thus, plaintiff reasons, because it was registered when the parties' contract was executed in July 1994, it is entitled to recover for all of its work except that performed during the two "lapse" periods.

Second, and alternatively, plaintiff argues that, notwithstanding the terminations of its registration, it "substantially complied" with the registration requirements and, thus, is not precluded from recovering for its work. Plaintiff

---

[5] In 1997, the legislature substantially amended ORS 701.065. Or Laws 1997, ch 818, § 3. The primary thrust of those amendments was to provide a mechanism by which contractors can retroactively "cure" lapses of registration. The statute now provides, in part:

"(2) The board, arbitrator, or court shall not apply the provisions of subsection (1) of this section to a lien or claim if the board, arbitrator or court determines that: * * *

"* * * * *

"(b) The contractor was registered with the board for some but not all of the times required under subsection (1) of this section and had a lapse in such registration and:

"(A) The contractor was not aware of the lapse in registration for more than a number of days established by the board, but not to exceed 90 days, before submitting a completed application for registration renewal with the board."

Those amendments apply only to "liens perfected and claims commenced on or after January 1, 1998." Or Laws 1997, ch 818, § 4.

asserts that, as a matter of fairness, the registration statutes must incorporate a principle of substantial compliance because strict, literal enforcement of ORS 701.065(1) (1995) could (and here, in plaintiff's view, did) lead to inequitable results. For example, if a contractor's insurance lapsed on the first day of a multi-year project, resulting in termination of registration, but the insurance and the registration were reinstated the next day, and the contractor then completed its performance, literal enforcement of ORS 701.065(1) (1995) would bar the contractor from payment for the balance of the work—and the owner could reap a concomitant windfall.

We return to the text of ORS 701.065(1) (1995). That text explicitly imposes two cumulative conditions. The contractor must: (1) be registered at the time that it bids or enters into the contract for performance of the work; *and* (2) be "registered continuously while performing the work for which compensation is sought." The critical term is "the work." Defendants contend that that term should be construed expansively to encompass the complete subject matter of the parties' contract, *i.e.*, the entire *project*. If "the work" is so broadly construed, plaintiff's claim necessarily fails because plaintiff was not "registered continuously" throughout the project. Conversely, and not surprisingly, plaintiff espouses a narrower construction, which, as we understand it, corresponds to the particular *services* for which payment is sought. Under such a reading, a contractor who agreed to build a house and whose registration lapsed before laying the foundation, but was reinstated and continuously maintained after the foundation was laid, would be entitled to recover for all subsequent "work"—*e.g.*, framing, roofing, finish work, etc.

The registration statutes do not define "the work," as that term is used in ORS 701.065(1) (1995). Nor has any Oregon appellate decision expressly construed that term. As a matter of common usage, the parties' contending constructions are both plausible. Webster's *Third New Int'l Dictionary*, 2634 (unabridged ed 1993) defines "work" as:

> "**1:** activity in which one exerts strength or faculties to do or perform: **a:** sustained physical or mental effort valued

as it overcomes obstacles and achieves an objective or result * * * **b:** the labor, task, or duty that affords one his accustomed means of livelihood * * * **d:** occasional or temporary activity toward a desired end: CHORE * * * **e:** a specific task, duty, function, or assignment often being a part or phase of some larger activity * * *."

Ultimately, however, plaintiff's proposed construction cannot be reconciled with other aspects of the statutory text and, particularly, the "registered *continuously*" language. *See Bannister v. Longview Fibre Co.*, 134 Or App 332, 335-36, 894 P2d 1259 (1995) ("The registration requirement attaches 'at the time the contractor bid or entered into the contract for performance of the work' *and* continues throughout the time of performance of the work for which compensation is sought.") (emphasis in original). If "the work" simply meant individual components of a contractor's total performance, the requirement of *continuous* registration would be a *non sequitur*. The contractor could avoid that requirement by simply defining "the work" in patchwork, pick-and-choose fashion by reference to which services were performed while registration was maintained and which were performed while the registration had lapsed. The former would be "the work" and, hence, compensable; the latter would not—and "continuously" would be effectively deleted from the statute.

■■ In construing statutes we are "not to omit what has been inserted or insert what has been omitted" by the legislature. ORS 174.010. Consequently, we endorse defendants' construction of ORS 701.065 (1995) as giving full effect to the statutory text: "the work" connotes the contractor's entire performance as defined by the parties' agreement. Thus, plaintiff was not "registered continuously" while performing "the work for which compensation was sought." ORS 701.065(1)(b) (1995).

■ Plaintiff asserts, nevertheless, that he so "substantially complied" with the continuous registration requirement as to avoid the bar of ORS 701.065(1)(b) (1995). Plaintiff contends that, because the literal application of ORS 701.065(1) (1995) would otherwise impose such draconian consequences for lapses of registration, the statutory scheme

must be tempered, and satisfied, by substantial compliance. We disagree for several reasons.

First, the text of ORS 701.055 (the registration requirement) and ORS 701.065(1) (1995) is explicit and unconditional. Nothing in the text suggests that the registration requirements, or the consequences of nonregistration, are somehow qualified by notions of substantial compliance. Rather, the only "safety valve" before the 1997 amendments, *see* n 5 above, was for contractors who were unaware of the registration requirement—and even then, only if application of the statute would "result in a substantial injustice to the unregistered contractor." ORS 701.065(2) (1995). *See Alza Corp. v. Lahman Development Corp.*, 162 Or App 128, 132, 986 P2d 59 (1999) (factual dispute concerning contractor's knowledge of registration requirement for purposes of ORS 701.065(2) precluded summary judgment). Here, it is undisputed that plaintiff was fully aware of the registration requirement, twice received notice of impending lapses of coverage, and twice failed timely to act on those notices.

Further, contrary to plaintiff's assertions, *Schlumberger Technologies, Inc. v. Tri-Met*, 145 Or App 12, 929 P2d 331 (1996), *rev den* 325 Or 80 (1997), does not judicially import substantial compliance into ORS 701.055 and ORS 701.065 (1995). Without belaboring the details of the analysis, our consideration of substantial compliance in *Schlumberger* related to ORS 279.029(6)(a), a public contract bidding provision that expressly refers to substantial compliance.[6] That is, *Schlumberger* does not hold that substantial compliance is sufficient to satisfy ORS 701.055; rather, it holds that, for purposes of the public contract bidding statutes, ORS 279.029, substantial compliance with the registration requirements of ORS 701.055 is sufficient. *See, e.g., Schlumberger*, 145 Or App at 17 ("ORS 279.029 * * * does not necessarily require Tri-Met to reject a bid that does not literally

---

[6] ORS 279.029(6)(a) defines "lowest responsible bidder" for purposes of award of public contracts:

"'Lowest responsible bidder' means the lowest bidder who has *substantially complied* with all prescribed public bidding procedures and requirements and who has not been disqualified by the public contracting agency under ORS 279.037." (Emphasis added.)

comply with all procedures and requirements. Rather, it permits Tri-Met to determine that S & B substantially complied with the statute.").

Finally, even if a principle of "substantial compliance" could somehow be imputed to the statute, plaintiff's conduct could not be so characterized. After receiving notice of impending loss of registration, plaintiff twice failed to timely respond, resulting in plaintiff's registration being terminated for more than seven weeks. Noncompliance is not "substantial compliance."[7]

We thus conclude that, because plaintiff was not "registered continuously while performing the work for which compensation is sought," plaintiff's construction-related claims are precluded. ORS 701.065 (1995). The trial court correctly entered summary judgment against those claims.

We turn to plaintiff's second assignment of error, which challenges the dismissal of plaintiff's seventh claim, seeking specific performance of an alleged oral agreement to convey an undivided one-half interest in a parcel of real estate. Again, the material facts are, for purposes of appeal, uncontroverted.

In 1995, Mt. Park's manager, Douglas Neuman, and his wife Rebecca, were considering purchasing a parcel of real estate adjacent to Dallas and Jodi Page's residence. Douglas Neuman approached Dallas Page and told him that, if the Pages would grant the Neumans an easement across their property for ingress and egress, then the Neumans would purchase the adjacent parcel. Douglas Neuman told Dallas Page that, as consideration for the grant of the easement, the Neumans would, in turn, convey an undivided one-half interest in the adjacent parcel to the Pages. The Pages agreed.

At the Neumans' request, a title company prepared an "Agreement for Easement." That agreement, signed by

---

[7] As noted, the legislature has amended ORS 701.065(2) to give noncomplying contractors the ability to retroactively cure lapses in registration. *See* 166 Or App at 177 n 5.

the Pages as grantors, and by the Neumans, trustees of the Neuman Living Trust, as grantees, stated that the Pages granted the easement "in consideration of One Dollar ($1) * * * paid and other valuable considerations, the receipt of all of which hereby is acknowledged." Before signing the agreement, Dallas Page asked, and Douglas Neuman confirmed, that the Neumans would prepare a deed granting the Pages a one-half interest in the real property that was to benefit from the easement. Thereafter, the Neumans failed to make that conveyance, and plaintiff, in its seventh claim for relief, sought specific performance of the alleged oral contract.

Defendants moved for summary judgment against the seventh claim. Defendants asserted primarily that, because the alleged oral contract was for the conveyance of real property, plaintiff's claim was barred by the statute of frauds. ORS 41.580(1)(e).[8] Plaintiff responded that the Pages' grant of the easement to defendants constituted part performance obviating the statute of frauds. The trial court, relying on language in *Wiggins v. Barrett & Associates, Inc.*, 295 Or 679, 669 P2d 1132 (1983), rejected plaintiff's "part performance" argument and allowed summary judgment:

> "*Wiggins* makes it clear that '[w]hen a transfer of an interest in land has been made, a promise to pay the price, if originally within the Statute of Frauds, ceases to be within it *unless the promised price is itself in whole or in part an interest in land.*' [295 Or at] 685 (emphasis added).

> "Thus, were the price to be paid simply money, plaintiff would be right in his assertion that this case has been taken out of the Statute of Frauds. However, plaintiff's allegation that the purchase price was a payment of one-half interest in the land to which access was granted, means that the case remains within the Statute of Frauds and plaintiff's allegations must be dismissed."[9]

---

[8] ORS 41.580 provides, in part:

"(1) In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by the lawfully authorized agent of the party * * *:

"* * * * *

"(e) An agreement for the leasing for a longer period than one year, or for the sale of real property or of any interest therein."

[9] Because the trial court allowed summary judgment on the basis of the statute of frauds, it did not reach and consider defendants' alternative arguments for dis-

On appeal, plaintiff asserts that the trial court erred in concluding that the statute of frauds barred the specific performance claim. Defendants advocate the trial court's analysis and also raise several alternative grounds for affirmance.

We begin with the statute of frauds and, particularly, *Wiggins*. In *Wiggins*, the plaintiffs conveyed an easement to a sewage district in exchange for the district connecting the sewer to the plaintiffs' property. The parties disagreed about whether a representative of the district had orally agreed to install a gravity flow sewer line rather than a line that required a less expensive pump connection. The district installed the line at a depth that would require the installation of a pump on plaintiffs' property, and the plaintiffs filed an action seeking damages against the district. The district asserted that the plaintiffs' claim was barred by the statute of frauds because the agreement, if any, was not in writing. The plaintiffs responded that their performance— *i.e.*, the conveyance of the easement—should take the agreement out of the statute. The trial court concluded that the statute of frauds barred the plaintiffs' claim and directed a verdict in favor of the district.

The Supreme Court reversed. In considering the plaintiffs' "part performance" argument, the court quoted from both *Corbin on Contracts* and the *Restatement (Second) of Contracts*:

"The *general rule* is stated by one author:

" 'The courts uniformly hold that the oral promise to pay the price is enforceable after its bargained-for equivalent, the transfer of the land, has been executed.'

"2 Corbin on Contracts 443. See, also, Restatement (Second) of Contracts § 125(3):

" 'When a transfer of an interest in land has been made, a promise to pay the price, if originally within the Statute of Frauds, ceases to be within it *unless the promised*

---

missing the seventh claim for relief, including the assertion that plaintiff was not the real party in interest because it was not a party to the alleged oral agreement. On appeal, defendants reiterate the real party in interest argument, and others, as alternative bases for affirmance.

*price is itself in whole or in part an interest in land.'"* *Wiggins*, 295 Or at 685 (emphasis added).

The emphasized language from the *Restatement* was the basis of the trial court's dismissal in this case.

The Supreme Court then addressed the application of those principles to cases in which the vendor has conveyed an interest in real property, but the vendee has refused to pay, invoking the Statute of Frauds:

"Underlying the holdings of cases such as *Malzer v. Schlisler*, [67 Or 356, 136 P 14 (1913)] * * * and the extensive list of other courts' decisions containing such holdings found in Corbin on Contracts, *supra*, appear to be two propositions. The first is that the very act of conveyance of the interest in land, absent some evidence of donative intent on the part of the grantor, is evidence every bit as good as a writing that the grantor had an obligation to convey. The second is that the buyer should not be allowed to obtain and keep the conveyed interest in land without paying the agreed price. Those two considerations are * * * appropriate to holding that the contract is taken out of [ORS 41.580(e)]. The sellers have conveyed and the [defendant] has accepted a conveyance of the easement and retains it. [The defendant] should pay what it promised for the easement." *Wiggins*, 295 Or at 685-86 (citations omitted).

Thus, the court in *Wiggins* concluded that the plaintiffs' conveyance of the easement took the contract out of the statute of frauds.

Neither *Wiggins, Malzer*, nor any other reported Oregon decision presented the issue posed here: The enforceability of an oral contract for the *mutual* exchange of interests in real property—*i.e.*, the grant of an easement given in exchange for a one-half interest in a parcel—where one party has fully performed, and the other has invoked the statute of frauds. *Wiggins* did not involve such a "land-for-land" transaction. So understood, the language from the *Restatement* section 125(3) quoted in *Wiggins*, which the trial court emphasized here, is absolutely incidental to *Wiggins's* analysis, much less its holding. The court in *Wiggins* had no occasion to consider—and certainly did not decide—the effect of part performance of a "land-for-land" oral contract.

In all events, the principle expressed in the proviso to *Restatement* section 125(3) is narrower than defendants urge. Section 125(3) expresses the principle, recognized in *Malzer* and *Wiggins*, that a vendor's conveyance of land constitutes "full performance" taking the agreement out of the statute of frauds so that the vendor may seek legal remedies, including money damages. Where, however, the consideration for that conveyance is, itself, a promise to convey an interest in land, the agreement is still within the statute of frauds, and the plaintiff cannot seek *damages*. Rather, the plaintiff is limited to equitable remedies, including specific performance. *Corbin on Contracts* explains that distinction:

> "The courts uniformly hold that the oral promise to pay the price is enforceable after its bargained-for equivalent, the transfer of the land, has been executed.
>
> "* * * * *
>
> "[F]ull performance by the plaintiff ordinarily allows enforcement of the defendant's oral promise to pay the price or to perform some other equivalent.
>
> "This rule differs from the 'part performance' rule in important respects. The 'part performance' rule was exclusively an equity rule, the remedy historically available being a decree for specific performance, and not money damages. The rule considered here made available to the vendor an action at law against the vendee. If the latter had promised to pay a specific sum in money, an action of debt would be maintainable after conveyance by the vendor. Such an action of debt was, however, substantially the specific enforcement of the vendee's promise, using common law execution in place of the chancellor's threat of imprisonment.
>
> "No doubt, one reason for this action of the courts of common law is that the vendee's promise to pay money is not in itself within the statute at all. The part of the transaction that brought it within the statute—the promise to convey—has been performed. The court did not feel that it was in any respect disregarding the statute, whereas in applying the 'part performance' doctrine, the court of equity is doing exactly that, even though it is doing so for reasons that make it equitable and just.

"The foregoing reasoning is not available in case the oral contract is one for the mutual exchange of lands. Here the defendant's promise to convey is as much within the statute because of its own content as is the promise of the plaintiff. The performance of the plaintiff's promise by making the conveyance, therefore, does not completely perform everything that brought the transaction within the statute. There are a few cases holding that the defendant's oral promise is not enforceable, even though the plaintiff's part has been performed. It is no doubt consistent with prevailing doctrine to hold that a common law action for damages is not maintainable. There is no money debt for land transferred, and the 'part performance' doctrine does not sustain an action for money damages. It is clear, however, that the plaintiff has a good case for equitable relief. Sometimes it may be desirable and sufficient to decree specific restitution of the land conveyed to the defendant by the plaintiff. There is authority, however, for a decree for specific performance compelling the defendant to convey the land as promised. This is the only remedy that is fully adequate, and particularly so if specific restitution has become impossible." 4 *Corbin on Contracts*, § 17.20 at 491, 494-96 (rev ed 1997) (footnotes omitted).

We agree that, when one party to an oral contract for the mutual exchange of interests in real property has performed and the other has refused, specific performance is "the only remedy that is fully adequate." Consequently, the trial court erred in concluding that the statute of frauds barred plaintiff's seventh claim for relief.[10]

■  Finally, defendants argue that the dismissal of the seventh claim should be affirmed on an alternative basis: Plaintiff was not a party to the oral agreement and, thus, is not a real party in interest to that claim. ORCP 26.[11] Defendants are correct that plaintiff is not a party to the agreement. However, the Pages, who are parties to the agreement,

---

[10] We hold only that the trial court erred in concluding, as a matter of law, that the doctrine of part performance does not apply where the promise sought to be specifically enforced is the conveyance of land. The doctrine of part performance requires that the performance be "unequivocally and exclusively referable to the contract, in the sense that * * * it must not be susceptible of being otherwise reasonably accounted for." *Strong v. Hall*, 253 Or 61, 70, 453 P2d 425 (1969). Additionally, there must be equitable grounds for enforcing the agreement. *Luckey et ux v. Deatsman*, 217 Or 628, 633, 343 P2d 723 (1959). Those matters were not at issue on summary judgment, and we imply no view as to their ultimate resolution.

[11] ORCP 26 provides, in part:

have ratified plaintiff's prosecution of the seventh claim through their ongoing and active participation in this litigation, including Dallas Page's submission of affidavits on plaintiff's behalf in opposition to defendants' motion for summary judgment. *See* ORCP 26. Given that ratification, there is no basis for dismissal under ORCP 26 B ("[R]atification of commencement of the action by * * * the real party in interest * * * shall have the same effect as if the action had been commenced in the name of the real party in interest.").

The court erred in entering summary judgment against plaintiff's seventh claim for relief.[12]

Dismissal of plaintiff's seventh claim for relief reversed and remanded; otherwise affirmed.

**DE MUNIZ, P. J.,** concurring.

I concur in the result reached by the majority. I write separately to explain my reasons for doing so.

I agree with plaintiff that ORS 701.035 *et seq.* is a statutory scheme designed to protect consumers from unscrupulous builders. *See Parsons v. Henry*, 65 Or App 627, 629, 672 P2d 717 (1983) (this statutory scheme "is essentially a consumer Act designed primarily to protect the public from irresponsible builders"). Defendant is a large developer, not the type of "consumer" the legislature had in mind when it created those statutes. In fact, the relationship between plaintiff and defendant seems much more like a joint venture, again most likely not a relationship contemplated by the statutes. However, under the statutory construction methodology we are bound to follow, the text of ORS 701.065 (1995) has a "plain meaning," and we must give effect to the statute as written. *See generally PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). The

---

"Every action shall be prosecuted in the name of the real party in interest. * * * No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for *ratification* of commencement of the action by, or joinder or substitution of, the real party in interest; and such *ratification*, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." (Emphasis added.)

[12] We have considered defendants' other alternative bases for affirmance of the dismissal of the seventh claim and reject those arguments without further discussion.

majority is correct that plaintiff failed to comply with that statute.

I also believe that plaintiff's assertion that the development was done in stages and consists, in fact, of separate projects might be a viable one to avoid the harsh results of the statute's application. However, I do not find plaintiffs to have developed this theory sufficiently for judicial review or, stated more basically, to have presented this theory in a posture necessary to give rise to a question of fact about the parties' intent.