Argued and submitted November 25, 1997, judgment reversed and remanded for new trial in part; otherwise affirmed; supplemental judgment for attorney fees and costs vacated and remanded with instructions July 15, 1998

## Douglas L. TURNBOW,
*Appellant,*

*v.*

## K.E. ENTERPRISES, INC.;
McMinnville City Sanitary Services, Inc.,
Ezra Koch; Bob Emrick; Sanifill of Oregon, Inc.,
and Riverbend Landfill Co.,
*Respondents,*

## Darol FUNK
and Dan Wilson,
*Defendants.*

(CV 93-198; CA A90437)

962 P2d 764

William R. Goode argued the cause and filed the briefs for appellant.

Gordon L. Osaka argued the cause for respondents. With him on the brief was Williams, Zografos & Peck.

Before Warren, Presiding Judge, and Edmonds and Linder, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiff brought claims for damages for employment discrimination, breach of contract and intentional infliction of emotional distress. The trial court granted summary judgment to defendants Ezra Koch and Bob Emrick on the discrimination claim. ORCP 47. It also granted summary judgment on the breach of contract and the infliction of emotional distress claims as to all defendants. The employment discrimination claim went to trial. At the close of plaintiff's case-in-chief, the court directed a verdict for defendants Sanifill of Oregon, Inc. (Sanifill) and Riverbend Landfill Co. (Riverbend). ORCP 60. That ruling left defendants K.E. Enterprises (KE) and McMinnville City Sanitary Services, Inc. (MCSS) in the case.

After the case was submitted to the jury, the jury found that MCSS was plaintiff's employer and awarded damages in the amount of $55,000 to plaintiff. The jury also found against plaintiff on his claim that KE was his employer. The trial court entered judgment against MCSS and incorporated in it the prior rulings as to the other defendants.[1] Later, it also entered a supplemental judgment that contained two money judgments. The first money judgment was for plaintiff's attorney fees and costs under ORS 659.121[2] as to MCSS. The second money judgment was against plaintiff in favor of all defendants except MCSS for attorney fees and costs. Plaintiff appeals from both judgments, and we reverse.

Plaintiff alleges in his complaint that defendants discriminated against him because of his physical impairment in the following ways:

> "The [defendants] discriminated against [plaintiff] on account of his physical impairment or because he was regarded as having a physical impairment in violation of ORS 659.425(1),[3] or because of his workers' compensation

---

[1] Plaintiff's theory was that Koch, Emrick, KE, Sanifill and Riverbend were his "joint" employers. We refer to them throughout the opinion collectively as defendants.

[2] ORS 659.121(2) provides that a court may allow the prevailing party costs and reasonable attorney fees in a claim brought under ORS 659.415.

[3] When plaintiff filed his complaint in 1993, ORS 659.425(1) provided:

activities in violation of ORS 659.410(1),[4] including but not limited to the following ways:

"(a)   by the [defendants] and defendants Darol Funk and Dan Wilson by making repeated comments regarding his perceived impairment, including how much [plaintiff] (on account of his injury) 'was costing the [defendants],' causing emotional distress;

"(b)   though [plaintiff] had sufficient seniority to work particular daytime driving assignments that he had requested; the [defendants] and Darol Funk refused to allow his transfer to daytime driving assignments he pre-ferred, citing a perceived physical impairment;

"(c)   the [defendants] failed or refused to make other reasonable accommodations for [plaintiff] for a back injury;

"(d)   continuously required [plaintiff] to work excessive hours; and

"(e)   discharged him on May 20, 1993."

Plaintiff also alleges that defendants "treated" him "outra-geously," intending to cause him severe emotional distress.

In plaintiff's case-in-chief, he offered evidence that he was first employed by Riverbend as a truck driver in 1980 in its recycling division. Apparently, Riverbend operated both a landfill and a garbage collection business at that time. While working for Riverbend, plaintiff sustained an on-the-job back injury in September 1987, for which he made a

---

"For the purpose of ORS 659.400 to 659.460, it is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or dis-charge from employment or to discriminate in compensation or in terms, con-ditions or privileges of employment because:

"(a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;

"(b) An individual has a record of physical or mental impairment; or

"(c) An individual is regarded as having a physical or mental impairment."

[4] When plaintiff filed his complaint, ORS 659.410(1) provided:

"It is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in [the Workers' Compensation Laws] or of ORS 659.400 to 659.460 or has given testimony under the provision of such sections."

workers' compensation claim and received benefits. At the time that he filed the complaint in this case, the claim was still open. Sometime after his injury, Sanifill purchased Riverbend's landfill business, and the recycling division was transferred to MCSS and renamed "City Recycling." During the operative period of time between September 1992 and May 1993, plaintiff worked on a commercial cardboard route with a front loader and was paid by City Recycling. The front loader lifted the cardboard containers and dumped their contents into the back of the truck that plaintiff drove. His work day began between 12:00 a.m. and 2:00 a.m., and he worked 13 to 15 hour days. He complained to his supervisors that the long hours of his work shift and the truck that he was driving caused him physical problems because they aggravated his back injury and caused him to lose sleep.

In January 1993, plaintiff asked Funk, his supervisor, if he could change from the commercial cardboard route to a day shift, residential curbside recycling route. Plaintiff testified that a driver typically would have such a request granted if the worker had more seniority than the person who was presently in that position. At the time that plaintiff made his request, he had more seniority than the other drivers who were currently driving the residential curbside recycling routes. Plaintiff testified that when he asked Funk about the transfer, Funk told him that he would not transfer him to the curbside route because of his back injury. Plaintiff later was terminated from his employment on May 20, 1993. One major thrust of plaintiff's discrimination claim is that he was physically capable of performing the work required by the residential route and that his employer used his back injury as a pretext to deny the transfer to which he was entitled because of seniority. A second thrust is the contention that he was fired because his workers' compensation claim was costing his employer money.

Throughout the course of litigation, a key issue was who was plaintiff's employer between September 1992 and May 1993. At that time, Riverbend was a subsidiary of Sanifill, and KE was the parent corporation of MCSS. City Recycling was a division of MCSS. In its pleadings, MCSS admitted that it was plaintiff's employer at the time alleged in the complaint. However, the file folder for plaintiff's employment

file continued to list Riverbend as his employer, while other employment-related documents showed KE and MCSS as employers. Wilson, one of the individual defendants, worked for Sanifill. Funk, who worked for MCSS, was plaintiff's supervisor. Koch and Emrick were the primary shareholders of KE.

On appeal, plaintiff makes eight assignments of error. Plaintiff does not assign as error the summary judgment awarded to Koch and Emrick on any of the claims. Five of the assignments address the judgment on plaintiff's claims. Three of plaintiff's assignments address the supplemental judgment for attorney fees and costs that the trial court awarded against plaintiff in favor of the prevailing defendants and the judgment in his favor against MCSS for attorney fees and costs. We first address the assignments of error regarding the judgment on plaintiff's claims.

■■ Plaintiff assigns as error the trial court's grant of summary judgment to defendants on the intentional infliction of emotional distress (IIED) claim. To withstand a motion for summary judgment on an IIED claim, a plaintiff is required to offer some evidence that demonstrates that the defendant's conduct constitutes an "extraordinary transgression of the bounds of socially tolerable conduct." *Patton v. J. C. Penney Co.*, 301 Or 117, 122, 719 P2d 854 (1986). Plaintiff explained in his memorandum in opposition to the motion for summary judgment filed in the trial court why, in his view, the summary judgment record supports a claim for outrageous conduct:

> "What Darol Funk did in denying the transfer, is he kept [plaintiff] in a position where he had to continue using an old truck, the same truck in which he had been injured on the job; the same truck in which the employer promised to install an air ride seat but didn't; * * *
>
> "* * * * *
>
> "As for Ezra Koch, in pages 18-22 of his deposition, he admits he was aware that [plaintiff] was in pain while on the job, yet he doesn't bother to install the air ride seat promised."

Plaintiff also testified that he was "really upset" over his treatment by his employer. We hold that the above evidence does not constitute evidence of an "extraordinary transgression of the bounds of socially tolerable conduct" as a matter of law. At best, Koch's and Funk's conduct shows an indifference toward plaintiff and his physical condition. Thus, the trial court did not err in granting summary judgment to defendants on that claim.

■■ Next, we turn to the issue of whether the trial court erred when it granted a directed verdict to Sanifill and Riverbend at the close of plaintiff's case-in-chief. We state the evidence and all reasonable inferences that arise from the evidence in the light most favorable to plaintiff. *Monson v. State of Oregon*, 136 Or App 225, 231, 901 P2d 904, *rev den* 322 Or 361 (1995). Plaintiff contends that, because Riverbend was identified as the "employer" in the workers' compensation claim, a jury could have found that Riverbend was plaintiff's employer. Although plaintiff initially worked for Riverbend, and it was his employer when his workers' compensation injury occurred, Riverbend had been sold to Sanifill and the recycling division in which he worked had been transferred to MCSS before the alleged discrimination in late 1992 and 1993. As a result, any employment relationship with Riverbend terminated before any of the discriminatory conduct occurred. Moreover, there is no evidence that plaintiff ever had any employment relationship with Sanifill. The trial court properly granted directed verdicts to Riverbend and Sanifill.

■ Plaintiff also assigns as error the trial court's ruling in which it struck plaintiff's claim for noneconomic damages[5] that he allegedly incurred before he was discharged. At the close of plaintiff's evidence at trial, defendants moved "to strike [plaintiff's] allegations for noneconomic damages during the time that he was employed." In particular, defendants argued:

---

[5] ORS 18.500 defines "noneconomic damages" as "subjective, nonmonetary losses, including but not limited to pain, mental suffering, emotional distress * * * inconveniences and interference with normal and usual activities apart from gainful employment."

"But with respect to noneconomic damages, during the time he was employed, the only evidence regarding that was the pain and suffering from his worker compensation injuries.

"But, again, that's not the jurisdiction of this Court. That's been taken care of during the worker compensation process."

The trial court ruled:

"And I will grant the claim—grant the motion to strike the claim for noneconomic damages alleged to have occurred during the period of employment, once again, for no evidence on that issue."

After the close of defendants' evidence, the trial court instructed the jury:

"The Court has limited the issues that you will be considering, essentially in a nutshell. Now, I'm going to give you more detailed instructions after closing arguments, the central issue for you to decide would be whether the plaintiff was discriminated against by termination. The other issue regarding the air-ride seat, the change of assignment to curbside recycling—what was the third one, * * *

"* * * Overtime hours.

"* * * You are free to consider that evidence for what you deem it to be worth as it might relate to the termination. But you are not going to be asked to decide whether there are damages to be awarded or whether there was discrimination in those claims except as it might relate to the issue of motivation for termination. The bottom line is that the focus of your concern will be whether or not the termination as based upon discrimination based upon the plaintiff's disability, perceived disability or the fact that he made a Worker's Compensation claim. That is the focus."

During the instructions, the court further explained the limitation:

"You are not to award noneconomic damages for the pain and suffering that the plaintiff sustained as a result of his Worker's Compensation injury because plaintiff has already been compensated for those injuries by the Worker's Compensation system."

The trial court's rulings suggest that it granted the motion to strike because it believed that plaintiff had been compensated for his injury by the workers' compensation benefits that plaintiff received and that therefore, there was no evidence that plaintiff had been damaged.

In *Palmer v. Bi-Mart Company*, 92 Or App 470, 474, 758 P2d 888 (1988), we held that, although the plaintiff had received benefits under the workers' compensation law for work-related stress she suffered, she was still entitled to seek additional damages as a result of the unlawful employment practices committed by the employer arising out of the same course of harassment. We said:

> "Plaintiff has suffered two distinct injuries. The first is to her right to a workplace free from sexual harassment, for which she has a remedy under the discrimination statute. * * * The second is a personal injury suffered in the workplace and compensable under the worker's compensation law. The legislature has created two separate statutory schemes to protect employes from those separate injuries." *Id.* at 474.

Our reasoning in *Palmer* applies to this case. Plaintiff has a statutory right to be free from discrimination in the terms and conditions of employment during the period of his employment. Although plaintiff was being compensated by the workers' compensation system for the back injury that he suffered in 1987, that compensation did not cover any noneconomic injuries that he could have suffered as a result of defendants' discrimination. Under the circumstances, the trial court erred when it struck plaintiff's claim for noneconomic damages incurred during his employment.

Plaintiff's other assignments of error regarding the judgment in his favor do not warrant discussion. The judgment against MCSS is reversed because the jury was deprived of the opportunity to consider the full measure of plaintiff's damage claim. However, the judgment in favor of the other defendants is affirmed for the reasons stated.

■ We next turn to the supplemental judgment. Plaintiff assigns as error the trial court's award of attorney fees and costs to defendants Koch, Emrick, Riverbend, Sanifill

and KE. The issue under this assignment of error also centers around who was plaintiff's employer between September 1992 and May 1993. Plaintiff argues on appeal:

"This court should agree that if the question of 'who was [plaintiff's] employer was a legitimate question of fact' through all phases of the proceedings below, then * * * naming the potential employers was not 'frivolous, unreasonable or without foundation.' "[6]

Defendants counter that the trial court intended to grant a judgment notwithstanding the verdict (JNOV) in favor of MCSS, but the order granting the motion was entered after the 55 day period in ORCP 63 had run and was of no legal effect. Nonetheless, according to defendants, the trial court's action demonstrates that it believed that none of the claims against any of the defendants was well-founded, and they assert that the trial court properly acted within its range of discretion when it awarded attorney fees.

■■■■ Whether a prevailing party is entitled to attorney fees under ORS 659.121 is a question of law. The amount awarded, if any, is reviewed for an abuse of discretion. ORS 659.121 imposes different standards for the award of attorney fees depending on whether the plaintiff or the defendant is the prevailing party. *Dobie v. Liberty Homes*, 53 Or App 366, 374, 632 P2d 449 (1981). In *Dobie*, we held that, in order for a *defendant* to be entitled to attorney fees under ORS 659.121, it must show that "the claim is brought in bad faith, is unreasonable or groundless" or that the "plaintiff persists in litigating the claim after it becomes evident the claim is unreasonable or unfounded." *Id*. That holding is based on a public policy intended to avoid discouraging employees from bringing employment discrimination claims and to promote vigorous enforcement of statutes prohibiting employment discrimination. *Id*. at 373-74.

---

[6] In a letter dated August 19, 1996, to the parties, the trial court said:

"I believe the question of who was [plaintiff's] employer was a legitimate question of fact. This is evidenced by the fact that it was sent to the jury as a special jury question."

In light of that statement, it is unclear as to why the trial court awarded attorney fees and costs to KE.

In a letter to counsel, the trial court said that, "I do find that all claims were disallowed on summary judgment, directed verdict or judgment notwithstanding the verdict, that the claims were accordingly 'unreasonable and/or without foundation.' " The letter seems to suggest that the trial court ruled that the claims were "unreasonable" or "without foundation" because it had granted summary judgments and directed verdicts and would have granted a JNOV. However, it does not necessarily follow that plaintiff's claims were "unreasonable" or "unfounded" against defendants merely because some of them were awarded summary judgments or directed verdicts. *See Dobie,* 53 Or App at 373 (adopting the reasoning of the United States Supreme Court in *Christiansburg Garment Co. v. EEOC,* 434 US 412, 98 S Ct 694, 54 L Ed 2d 648 (1978), that "trial courts should resist the temptation to conclude that because plaintiff did not ultimately prevail his claim must have been unreasonable or without foundation"). Claims may at the time of filing be well founded and brought in good faith but ultimately be unsuccessful.

Although the trial court properly granted a directed verdict to Sanifill and Riverbend because there was no evidence that those parties were responsible for the discriminatory treatment suffered by plaintiff, plaintiff was not obligated at his peril to choose only one of several putative employers as a defendant and then later find himself precluded because he did not join the others as party defendants. Moreover, there was evidence, that, if believed, could reasonably lead a fact-finder to find that KE was plaintiff's employer at the time of his injury and that it was responsible for the discriminatory treatment. Thus, the trial court based its ruling regarding the award of attorney fees to KE, Riverbend and Sanifill on an erroneous premise.

Also, the trial court erred in awarding attorney fees to Koch and Emrick. In *Ballinger v. Klamath Pacific Corp.,* 135 Or App 438, 898 P2d 232, *rev den* 322 Or 360 (1995), we held that a corporate president was not an "employer" for the purposes of claims brought under ORS chapter 659. We said:

"[T]he Title VII definition of 'employer' differs from the ORS chapter 659 definition in one important particular: the federal definition includes 'agents' to whom the highest level of

supervisory authority has been delegated by the employer. In contrast, the state definition appears to *exclude* agents by limiting employer liability to those who 'directly *or through an agent* * * * reserv[e] the right to control' their employees. ORS 659.010(6). * * * Under that definition, * * * the agent is not an 'employer.' " *Id.* at 452 (emphasis in original).

However, we also said that, although the corporate president was not an employer under Oregon law, he was not entitled to his attorney fees. We said:

"We agree * * * that it was not 'frivolous' or irrational for plaintiffs to argue that [the corporate president] should be considered an 'employer' for purposes of the unlawful employment statutes. Although we have concluded that plaintiffs' argument in that regard does not prevail under Oregon law, our determination on that issue of first impression does not affect the correctness of the trial court's findings about the propriety of plaintiffs' motive in bringing their sex discrimination claims against [the corporate president]." *Id.* at 455.

The same rule applies here. *Ballinger* was decided in July 1996, the same month that this case went to trial. Thus, at the time plaintiff filed his complaint, it was not frivolous to bring an action under ORS chapter 659 against the supervisor and to argue that the supervisor was an "employer" for purposes of the statute. Moreover, plaintiff presented evidence that both Koch and Emrick had discriminated against him.[7] On this record, it was not frivolous or unreasonable for plaintiff to have named Koch and Emrick as employers when he brought the action. We conclude that the trial court erred in awarding attorney fees under ORS 659.121 to KE, Sanifill, Riverbend, Koch and Emrick because it failed to apply the rule that prevailing defendants under the statute have a higher threshold to demonstrate entitlement to fees.

---

[7] Plaintiff testified that Koch had commented more than one time regarding his workers' compensation claim. He testified, "Koch approached me in the break room * * * [a]nd told me he just paid 5 or $7,000 out of my claim and how much it was costing him." Emrick was a supervisor of plaintiff and was involved in plaintiff's termination. Both Koch and Emrick are employed by KE.

Because of the above analysis, we need not address plaintiff's other assignment of error regarding the judgment for attorney fees against him.

■ Next, plaintiff assigns as error the trial court's failure to award plaintiff all of his requested costs and attorney fees. Plaintiff submitted a supplemental motion for an award of additional attorney fees in the amount of $7,938.00 and $33.75 in costs, which the trial court denied. The trial court ruled:

> "Plaintiff's [sic] are entitled, as to defendant MCSS, to their attorney fees and costs in the amount of $43,434. I cannot conclude that the failure of defense counsel to file the necessary order on the motion for judgment NOV constitutes a 'special circumstance' authorizing a denial of this claim. * * * [P]laintiff [is] the prevailing party. That being the case, I conclude that this court lacks authority to deny the claim for pr[e]vailing party attorney fees under the statute."

It is not clear from the court's explanation why it did not award plaintiff additional attorney fees for defending against the JNOV. In fact, its ruling appears to support plaintiff's request for additional attorney fees. Because we cannot discern an apparent reason for the trial court's ruling, we cannot review whether it was an abuse of discretion for the trial court to deny the motions for the additional fees and costs. *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 84, 95-96, 957 P2d 1200, *adhered to on recons* 327 Or 185, 957 P2d 1207 (1998). Thus, we include that issue within the scope of remand.[8]

---

[8] In 1995, the legislature enacted ORS 20.075, which provides that the court "shall consider" the listed factors when deciding whether to award attorney fees. In this case, it does not appear from the trial court's ruling that it applied that statute and considered the listed factors. However, neither party raised that issue before the trial court, nor did they raise that issue on appeal. In *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 84, 957 P2d 1200, *adhered to on recons* 327 Or 185, 957 P2d 1207 (1998), the court held that, standing alone, the absence of explanatory findings under ORS 20.075 to support an award or a denial of attorney fees is not a ground for reversal and that a court need only address the objections under the statute that are material to its decision. In the event that ORS 20.075 is raised on remand by the parties, the trial court should apply its provisions in accordance with the court's holding in *McCarthy*.

Also, MCSS does not dispute that plaintiff was entitled to his original award of attorney fees and costs in the amount of $43,434. On remand, the trial court should re-enter an award of attorney fees and costs in at least that amount.

■ ■ One more matter requires discussion. The jury awarded plaintiff $40,000 in economic damages and $15,000 in noneconomic damages. In light of the trial court's erroneous ruling striking a portion of plaintiff's claim for damages, we must decide the appropriate scope of remand on retrial of plaintiff's discrimination claim against MCSS. Plaintiff states in his brief that he "does *not* seek review of the jury's award of damages against [MCSS] arising from the termination." (Emphasis in original.) Plaintiff concludes by requesting that "[his] claim for noneconomic damages during employment * * * should [be] remanded for a damage determination."[9] Plaintiff has cited no case law to us to support his request that the judgment for compensatory damages from which he appeals should remain intact and that the remand should be limited to the consideration of any additional damages. Indeed, the general rule is that, when a trial court has erred, there should be a retrial on all factual issues, including damages. *Maxwell v. Port Terminal RR. Co.*, 253 Or 573, 577, 456 P2d 484 (1969); *see also Wells v. Marleau*, 79 Or App 784, 787-89, 720 P2d 409, *rev den* 302 Or 159 (1986) (further explaining the holding in *Maxwell*). However, that rule has been tempered by our holdings in subsequent cases in which the trial court's error does not bear on other aspects of the case. For instance, in *Baker v. English*, 134 Or App 43, 48-49, 894 P2d 505 (1995), *rev'd on other grounds* 324 Or 585 (1997), we discussed the scope of remand of a jury's award of noneconomic and economic damages. We held:

> "[T]his case is an appropriate one for a limited remand. The denial of discovery bears directly only on emotional distress damages, which could only have been part of the jury's award of noneconomic damages. The liability and economic damages findings are not connected with the emotional distress or discovery issues, and the issues of liability and economic damages, to which no independent error was assigned by defendant on appeal, 'are no longer viable issues in the case.'" *Id.* at 49.

The same rationale is applicable to this case. The trial court's error had no bearing on the jury's determination of liability or the economic damages, but rather only affected

---

[9] Defendants' brief does not anticipate the scope of remand.

the jury's assessment of noneconomic damages. Moreover, the evidence about noneconomic damages incurred during and after plaintiff's termination is intertwined. Plaintiff testified that before he was terminated, the long hours wore him down so that he was nervous and could not sleep. He also testified:

"After I was terminated, I started stuttering, not heavily, but off and on, I would start stuttering. Nervous, couldn't sleep. In fact, it took me probably 6 months after I went to work for Tree Line where I could calm down enough to actually do a fair job for that company. I lost a lot of sleep.

"I was just totally lost. I have never been without a job, so I felt pretty lost."

We conclude that the jury is entitled to consider the totality of the evidence about noneconomic damages and evaluate it as a whole to determine plaintiff's noneconomic damages. We remand for a new trial on all noneconomic damages as to defendant MCSS.[10]

Judgment reversed and remanded for new trial against MCSS on noneconomic damages; otherwise affirmed. Supplemental judgment for attorney fees and costs in favor of prevailing defendants and plaintiff vacated and remanded with instructions to enter judgment for plaintiff in at least the amount of $43,434 with interest from the date of entry of original supplemental judgment and for further reconsideration.

---

[10] Our review of the issues raised by plaintiff on appeal has been hampered by the failure to comply fully with the rules of appellate procedure. In *State v. Yarbor*, 133 Or App 360, 362-63, 891 P2d 703, *rev den* 321 Or 512 (1995), we declined to consider certain assignments of error because of the noncompliance with appellate rules. We did consider those assignments of error that were referable to the appendix in the defendant's brief or that had references that could be found in the statement of facts. Here, plaintiff set out transcript references in his assignments of error and his statement of facts only in part. Several of his assignments of error failed to contain transcript references. Appellate counsel should be cognizant that ORAP 5.40(10) and ORAP 5.45(3) and (4) contemplate that an assignment of error contain transcript references to facilitate review.