Argued and submitted May 12, 2004 at Wallowa County Courthouse, Enterprise,
judgment modified to reduce attorney fees awarded to defendants to $7,870;
otherwise affirmed April 13, 2005

Franklin E. CHASE,
*Appellant,*

*v.*

David D. VERNAM
and Deborah L. Vernam,
dba VEMCO,
dba Vernam Equipment Manufacturing Company, Inc.,
dba Vernam, Inc.,
an Oregon corporation,
*Respondents,*

*and*

Richard D. VERNAM,
*Defendant.*

01-01-11862; A120876

110 P3d 128

Michael A. Gilbertson argued the cause for appellant. With him on the brief was Ransom, Gilbertson, Martin & Lefkowitz, LLP.

Mona K. Williams argued the cause and filed the brief for respondents.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Deits, Judge pro tempore.

DEITS, J. pro tempore.

**DEITS, J. pro tempore**

Plaintiff filed a complaint for unlawful discrimination against his employer,[1] asserting that his employment had been terminated in retaliation for pursuing a workers' compensation claim. ORS 659A.109; ORS 659A.043; ORS 659A.885(1).[2] Because the amount requested in plaintiff's complaint was less than $25,000, the action was subject to mandatory arbitration. ORS 36.405(1)(a); ORS 36.400(3). The arbitrator ruled in favor of defendant, as did a jury following plaintiff's subsequent appeal to circuit court. As the prevailing parties at trial, defendants sought attorney fees, relying on ORS 36.425(4) and ORS 659A.885(1). The trial court awarded defendants $15,492.91 in attorney fees. Plaintiff appeals the trial court's judgment, assigning error to the allowance of attorney fees. We conclude that defendants were entitled to only a portion of the attorney fees awarded and, accordingly, we modify the amount of attorney fees awarded.

Because defendants were the prevailing parties at trial, we would usually state the facts in the light most favorable to defendants. Or Const, Art VII (Amended), § 3; *Jensen v. Medley*, 336 Or 222, 226, 82 P3d 149 (2003). In this case, however, as we explain below, 199 Or App at 139-40, we must evaluate whether plaintiff's claim was unreasonable or groundless as a matter of law. Accordingly, we focus on those facts that would have been supported by the evidence that plaintiff offered in support of his claim.

Defendants own a steel fabrication business in Enterprise. They first hired plaintiff as a laborer in 1999 to work on the demolition and rebuilding of a mill in Elgin. The

---

[1] Plaintiff was employed by VEMCO, Inc., which is owned by defendants David D. and Deborah L. Vernam. We note that parts of the record indicate that the latter name might be spelled "Debra L. Vernam."

[2] ORS 659A.885(1) creates a civil cause of action for violation of certain statutes defining unlawful employment practices, including ORS 659A.109 and ORS 659A.043. At the time that plaintiff filed his complaint, ORS 659A.109 was numbered ORS 659.410 and ORS 659A.043 was numbered ORS 659.415. Those statutes were renumbered in 2001. For convenience, we use the current numbering. When plaintiff filed his complaint, the precursor to ORS 659A.885 was numbered ORS 659.121. The 2001 Legislative Assembly repealed ORS 659.121 and enacted ORS 659A.885. Or Laws 2001, ch 621, §§ 15, 90. The differences between ORS 659.121 (1999) and ORS 659A.885 are not relevant to our analysis. Again for convenience, we cite the current statute in this opinion.

job required plaintiff to work long hours, often ten or more hours a day, six days per week. Plaintiff began experiencing extreme arm pain at work on August 17, 1999. He reported his pain to defendant David Vernam, who asked him to stay on the job anyway. On August 18, he told Vernam that his arm hurt more than it had the day before, and Vernam sent him home. Plaintiff worked the next day, although his arm continued to hurt. On August 20, a roto-hammer that plaintiff was using completely twisted around his arm, causing him to drop it. Later that day, while driving a stake to hold concrete forms, his hand went numb and he experienced shooting pain in his arm. One of plaintiff's coworkers who was in the area at the time of the alleged roto-hammer accident did not recall such an event, although another coworker did. According to plaintiff, he reported those incidents to the foreman, Tom Roath, and asked him to fill out his time card when he left work that day because he was unable to write. Neither Roath nor Pete Beaudoin, plaintiff's crew supervisor, recalled plaintiff reporting the August 20 injury. Plaintiff admitted that he ultimately completed his time card for the twentieth himself and marked a box indicating that no injury had occurred that day.

Plaintiff worked the following day, even though his arm continued to hurt. He thought that if he rested the next day, a Sunday, his arm would improve and he could return to work on Monday. He did not return to work on Monday, however, because he continued to be in pain. Plaintiff then made an appointment with his doctor, Dr. Neeley. Plaintiff told defendants that he would not be coming to work, told them why he was not coming in, and asked for the company's workers' compensation number. Deborah Vernam asked plaintiff to see the company doctor, Dr. Boyd, for a second opinion. Plaintiff saw both Neeley and Boyd. Plaintiff testified that, when he saw Boyd, Boyd told him that he should not go back to work until Boyd had told him that he could do so. Plaintiff stayed home the next day. Dave Vernam called him that day and, according to plaintiff, asked him "what he was trying to do to him" and why plaintiff had not told him about the work injury.

Sometime before August 25, Neeley released plaintiff to light-duty work. Neeley instructed him not to do work

involving the use of his right arm and not to lift more than five pounds. Defendants wrote to Boyd, proposing to have plaintiff do painting with a hand-held brush "that would not consist of lifting anything over [five pounds] and would only require the use of his uninjured hand." Boyd signed off on the proposal, but noted that plaintiff should be reevaluated in two weeks. SAIF, on behalf of VEMCO, also sent Neeley a letter explaining the duties that it believed that plaintiff could perform within his restrictions, namely work that did not involve lifting more than five pounds or using his injured hand. Neeley agreed that those duties were appropriate.

On August 25, plaintiff filed a workers' compensation claim. On the same day, he also received defendants' offer of re-employment, which specified that he would be performing only light-duty work.[3] Dave Vernam told plaintiff at that time that he was not to do anything outside his restrictions or he would be fired. Plaintiff worked that day but hurt his arm lifting some beams. Before leaving work, plaintiff told Dave Vernam that he would not be in the next day because he had to fill out workers' compensation forms. Also on August 25, Deborah Vernam told SAIF that she was concerned that plaintiff's workers' compensation claim was not legitimate.

On August 27, plaintiff returned to work. According to plaintiff, he was given work assignments that required him to get down on his hands and knees, which he could not do. He was also given work that required him to use a "man-lift," which he had trouble doing because his injured arm was in a sling. Dave Vernam testified that plaintiff was given a choice of light-duty assignments such as picking up trash. Plaintiff testified that, when he left work that day, he told Dave Vernam that they needed to come to an agreement about what work he would be able to do.

On August 28, plaintiff again did not go to work because he was in too much pain to work. Although he was taking pain medication, he said that he had slept poorly because of the pain. The parties disagree about whether plaintiff advised defendants that he was not coming in that

---

[3] Plaintiff signed the offer of re-employment on August 27.

day. Dave Vernam testified that they were not told that he was not coming in or given any reason for his absence. Plaintiff's fiancée testified that she called VEMCO to report that plaintiff was not coming in but that she was unable to reach anyone and did not remember if she left a message.

On August 30, plaintiff returned to work. Dave Vernam gave him a newer man-lift that was smoother to operate while he was painting. Despite the better equipment, plaintiff still experienced pain while painting. He left work at 4:30 p.m., telling Dave Vernam that he was going back to his doctor to obtain a clarification of his work restrictions.

Plaintiff returned to work on August 31, but went home early because he said that he could no longer do the work. Vernam told plaintiff that if he wanted to be paid, he would have to stay on the job site, even if it meant just sitting on the steps. Plaintiff left work anyway. That evening, plaintiff left a message on the Vernams' home answering machine telling them that he had a doctor's appointment on September 3 and that he would not be back until after that appointment. He testified that he also told them that he was unsure about whether they were working over the Labor Day weekend, that he had to attend a family reunion, and that he would not be coming in until September 7 unless he heard to the contrary.

Plaintiff did not report to work on September 1 or 2. On September 2, defendants notified plaintiff that he was being terminated. The termination letter stated:

"You did not show for work on 8/28/99. After asking David Vernam if VEMCO employees would be working 5 days a week/10 hours a day, you were told that we were working 6 days a week/10 hours a day, just as we have been doing since the beginning of your employment. Nothing had changed and you were to be there on 8/28/99.

"You were cleared for Light Duty Work by both Dr. Neeley and Dr. Boyd. You were given Light Duty Work which was consistent with the restrictions given by both doctors, yet you left early on 8/31/99 saying you could no longer do the work and you were going to see your doctor.

"On Tuesday, August 31, 1999, you left a message on David and Debra Vernam's *home* answering machine stating that you had a doctor's appointment with Dr. Neeley on Friday, September 3, 1999 at 2:00 p.m. and that you would *not* return to work until *after* you had *seen* your doctor.

"You did not show up for work on 9/1/99 or on 9/2/99. You had also stated on the answering machine that you would *not* be back to work until Tuesday, September 7, 1999. You stated that you did not know what Vemco's work schedule would be for the Labor Day weekend holiday, but that you had a family reunion anyway that you would be attending rather than being at work. You did not *request* this time off, you were simply taking it whether VEMCO needed you or not, which is in violation of the job offer you signed on 8/27/99."

(Emphasis in original.)

On September 2, SAIF sent plaintiff a letter notifying him that it was denying his workers' compensation claim on the ground that the injury did not occur in the course and scope of his employment.[4] Plaintiff saw Neeley on September 3. At that time, Neeley noted that plaintiff was "completely unable to use his right hand," that for his safety he should be given a "sedentary job such as answering the phone, filing," and that, if that was not possible, "[h]e should be *off* work until further evaluation and treatment by an orthopedic surgeon." (Emphasis in original.) Neeley also stated that plaintiff should not be working on a man-lift. Plaintiff did not notify defendants of Neeley's instructions or request reinstatement based on the doctor's recommendations.

In January 2001, plaintiff filed a complaint alleging unlawful employment discrimination against defendants. As noted above, the case was subject to mandatory arbitration pursuant to ORS 36.405(1)(a) and ORS 36.400(3). The arbitrator found in favor of defendants, concluding that the complaint should be dismissed with prejudice and that defendants were entitled to costs and disbursements, but not attorney fees. Plaintiff appealed the decision of the arbitrator to the circuit court and requested a *de novo* jury trial. At trial,

---

[4] SAIF eventually accepted plaintiff's workers' compensation claim.

the jury found in favor of defendants. Defendants then sought attorney fees in the amount of $15,492.91 under ORS 659A.885(1), arguing that plaintiff's action was "frivolous, unreasonable and without foundation." Alternatively, defendants sought that portion of their attorney fees incurred after the arbitrator's award—$7,870—under ORS 36.425(4). The trial court concluded that "plaintiff's action was frivolous, unreasonable and without foundation" under ORS 659A.885(1) and awarded defendants the full amount of $15,492.91.

■      On appeal, plaintiff assigns error to the trial court's allowance of attorney fees. Before we address that argument, however, we must consider defendants' argument that plaintiff did not preserve any objection to the award of attorney fees for purposes of appellate review because plaintiff's objections to the fee request were not timely under ORCP 68 C(4)(b). ORCP 68 C(4)(b) requires that "[a] party may object to a statement seeking attorney fees * * * by written objections to the statement" and that the "objections shall be served within 14 days after service on the objecting party of a copy of the statement." It is undisputed that plaintiff's objections were not filed within 14 days of service of the statement of fees and therefore the objections were untimely. However, despite the fact that his objections were untimely, the trial court allowed plaintiff to discuss them at the hearing on defendants' request for attorney fees.

Defendants argue that, because the objections were untimely, the trial court should not have allowed plaintiff to address them at the hearing and should not have considered them. Defendants contend, relying on *Young and Young*, 172 Or App 108, 17 P3d 577 (2001), and *Tibbets and Mueller*, 183 Or App 379, 52 P3d 1067 (2002), that the provisions of ORCP 68 C(4)(b) are mandatory and that the court may not disregard a procedural defect such as the untimeliness of objections to an attorney fee request.

■      We disagree. A trial court is not *required* to allow an attorney fee request if there is no timely objection. A court retains whatever discretion it may otherwise have to award or deny fees even if there is not a timely objection. As we

explained in *Frederickson v. Ditmore*, 132 Or App 330, 334-35, 888 P2d 108 (1995), the trial court's discretion to award fees is governed by ORCP 68 C(4)(d), which provides, "If objections are not timely filed the court *may* award attorney fees * * * sought in the statement." (Emphasis added.) In *Frederickson*, we held that the trial court retained discretion to assess the reasonableness of the defendant's fee request even though the plaintiff's objection to the defendant's attorney fees was not timely.

This court's decisions in *Young* and *Tibbets*, on which defendants rely, are distinguishable. In *Young*, we reversed a judgment awarding attorney fees to the father because the trial court had awarded fees without first granting the mother an opportunity to respond, pursuant to ORCP 68 C(4)(b), to the father's attorney fee request. In *Tibbets*, we relied on the holding in *Young* to similarly conclude that the trial court had erred in awarding fees to the mother without affording the father a hearing on his objection to the attorney fee request. Neither of those cases involved the circumstances presented here, namely the consequences of a party's failure to timely file objections to an attorney fee request. Rather, both *Young* and *Tibbets* involved circumstances in which a procedural defect resulted in depriving one of the parties of an opportunity to be heard. That did not happen here.

Our conclusion that the trial court did not err in allowing plaintiff to present his objections during the hearing or in considering the objections is also supported by ORCP 15 D. That provision allows the court to consider an objection that is not filed within the time limits set by the procedural rules. It provides:

> "The court may, in its discretion, and upon such terms as may be just, allow an answer or reply to be made, or allow any other pleading or motion after the time limited by the procedural rules, or by an order enlarge such time."

For the above reasons, we conclude that, under the circumstances here, the trial court did not err in considering plaintiff's objections and that the untimeliness of plaintiff's objections does not bar plaintiff from raising those objections on appeal.

■     We turn to the merits of plaintiff's objections to the allowance of attorney fees to defendants. Plaintiff argues that the trial court erred in determining that his action "was frivolous, unreasonable and without foundation" and, consequently, that defendants were entitled to attorney fees under ORS 659A.885(1). Defendants respond that the award of fees was proper, either in whole or in part, for two reasons. First, they argue that the trial court correctly determined that plaintiff's action was "frivolous, unreasonable and without foundation" and, thus, the trial court properly allowed the full amount of attorney fees under ORS 659A.885(1). Second, defendants argue that, even if the trial court erred in concluding that plaintiff's action was frivolous, unreasonable, and without foundation, they were entitled to that part of their attorney fees incurred after the arbitrator's award under ORS 36.425(4)(a).

■     The prevailing party in a legal proceeding generally is not entitled to an award of attorney fees unless the award is authorized by a statute or a specific contractual provision. *Domingo v. Anderson*, 325 Or 385, 388, 938 P2d 206 (1997). Defendants asserted a right to attorney fees under two statutes: ORS 36.425(4) and ORS 659A.885(1).

■     We first consider defendants' argument that the trial court correctly concluded that they were entitled to attorney fees under ORS 659A.885(1) because plaintiff's action was "frivolous, unreasonable and without foundation." We address that argument first because, if it is correct, the entire award of fees was proper and we need not address defendants' argument that part of the fees was mandated by ORS 36.425(4)(a). ORS 659A.885(1) provides that, in specified actions for unlawful employment practices, a "court may allow the prevailing party costs and reasonable attorney fees at trial and on appeal."[5] However, under our case law, a court

---

[5] As noted, the version of this statute in effect before 2001, ORS 659.121(1), was repealed in 2001. 199 Or App at 131 n 2. The attorney fee provision of *former* ORS 659.121(1) (1999) provided:

"In any suit brought under this subsection, the court may allow the prevailing party costs and reasonable attorney fees at trial and on appeal."

The attorney fee provision of ORS 659A.885(1) provides:

"In any action under this subsection, the court may allow the prevailing party costs and reasonable attorney fees at trial and on appeal."

has discretion to allow attorney fees to a prevailing defendant under ORS 659A.885(1) only when the plaintiff's claim is brought in bad faith or is unreasonable or unfounded. *Turnbow v. K.E. Enterprises, Inc.*, 155 Or App 59, 68, 962 P2d 764 (1998). *See also McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 84, 93-94, 957 P2d 1200, *adh'd to on recons*, 327 Or 185, 957 P2d 1200 (1998) (*McCarthy I*) (attorney fee awards to prevailing defendants under *former* ORS 659A.121(1) (1999) limited to situations in which the plaintiff's claim was "frivolous, unreasonable, or without foundation") (citing *Schlumberger Technologies, Inc. v. Tri-Met*, 145 Or App 12, 21 n 9, 929 P2d 331 (1996), *rev den*, 325 Or 80 (1997)). We review the trial court's conclusion on that issue for errors of law. *Turnbow*, 155 Or App at 68; *see McCarthy v. Oregon Freeze Dry, Inc.*, 334 Or 77, 86-93, 46 P3d 721 (2002) (*McCarthy II*) (reviewing for legal error Court of Appeals' conclusion that the plaintiff's arguments on appeal were frivolous, unreasonable, or without foundation).

In *Turnbow*, we reiterated the standard that a trial court must apply in determining whether a prevailing defendant in an action for unlawful employment practices may be allowed attorney fees:

"ORS 659.121 imposes different standards for the award of attorney fees depending on whether the plaintiff or the defendant is the prevailing party. *Dobie v. Liberty Homes*, 53 Or App 366, 374, 632 P2d 449 (1981). In *Dobie*, we held that, in order for a *defendant* to be entitled to attorney fees under ORS 659.121, it must show that 'the claim is brought in bad faith, is unreasonable or groundless' or that 'the plaintiff persists in litigating the claim after it becomes evident the claim is unreasonable or unfounded.' *Id.* That holding is based on a public policy intended to avoid discouraging employees from bringing employment discrimination claims and to promote vigorous enforcement of statutes prohibiting employment discrimination. *Id.* at 373-74."

155 Or App at 68 (emphasis in original).

Defendants here do not argue that plaintiff's employment discrimination claim was brought in bad faith.

---

Because the wording is virtually identical, we rely on cases construing and applying *former* ORS 659.121(1) (1999) in this case.

Rather, they contend that the claim was unreasonable or groundless. In *Turnbow*, we concluded that the plaintiff's claim was not unreasonable or unfounded because the plaintiff had presented "evidence that, if believed, could reasonably lead a fact-finder" to make the findings necessary to support an employment discrimination claim. 155 Or App at 69. Those possible findings included findings that one of the defendants was the plaintiff's employer and that that employer was responsible for the discriminatory treatment that the plaintiff had suffered. Accordingly, we concluded that the trial court had erred in allowing attorney fees to that defendant based on its determination that, as to that defendant, the plaintiff's claim was unfounded.

■ Accordingly, in evaluating whether plaintiff's claim in this case was unreasonable or unfounded, we consider the evidence in the light most favorable to plaintiff. If plaintiff presented evidence that, if believed, could reasonably have led a factfinder to find that the elements necessary to constitute an employment discrimination claim had been established, it follows that plaintiff's claim was not unreasonable or unfounded for purposes of ORS 659A.885(1).

Plaintiff argues that he presented evidence that would have been sufficient to allow a jury to find that defendants had discriminated against him by terminating his employment for pursuing his workers' compensation rights. In plaintiff's view, the termination letter provides evidence of discrimination. Plaintiff points out that the letter specifically mentions that he had been cleared for light-duty work, that he had left work early on August 31 to see his doctor, and that he had told defendants on September 3 that he would not be back to work until he had seen his doctor. Despite that information, according to plaintiff, the letter also states that he was being fired precisely for having missed work before seeing his doctor. In plaintiff's view, that evidence, considered together with defendants' asserted belief that his claim was fraudulent, was sufficient to have allowed a jury to find that he was discriminated against because he was pursing a workers' compensation claim.

Defendants argue, however, that plaintiff's belief that he was discriminated against simply is not supported by

the evidence in the record. Defendants assert that plaintiff's testimony and that of his witnesses is in direct opposition to the evidence presented by defendants. Defendants acknowledge that if plaintiff's version of the facts were believed, "then Plaintiff's claim would be considered reasonable." Defendants argue that if their version of the facts were believed, then "any reasonable person in Plaintiff's position would have realized that the termination of employment was a result of Plaintiff's own actions and not because Plaintiff filed a workers' compensation claim." Moreover, defendants note that the trial court, who was in the best position to observe the witnesses and assess their credibility, found that plaintiff's claim was unreasonable and frivolous.

In *Hardie v. Legacy Health System*, we reiterated that, for a plaintiff to establish a *prima facie* case for retaliatory discrimination under ORS 659A.109(1), a plaintiff must show:

> " '(1) that the plaintiff invoked the workers' compensation system; (2) that the plaintiff was discriminated against in the tenure, terms or conditions of employment; and (3) that the employer discriminated against the plaintiff in the tenure or terms of employment because he or she invoked the workers' compensation system.' "

167 Or App 425, 433, 6 P3d 531 (2000), *rev den*, 332 Or 656 (2001) (quoting *Stanich v. Precision Body and Paint, Inc.*, 151 Or App 446, 457, 950 P2d 328 (1997)). In *Hardie*, we noted that the plaintiff had met the first two requirements by producing evidence that she had filed her workers' compensation claim and thereafter had been terminated from her employment. There, as here, the dispute concerned whether the plaintiff had presented evidence that gave rise to a triable issue as to the third requirement, namely that her employer fired her because she had invoked the workers' compensation system.

In *Hardie*, as here, the plaintiff argued that the filing of her workers' compensation claim was not necessarily the only factor involved in her firing but was a "substantial factor" that contributed to her discharge. We explained in *Hardie* that, in such "mixed motive" cases,

142

"[t]he crux of the standard * * * is whether, in the absence of the discriminatory motive, the employee would have been treated differently."

167 Or App at 435. We noted in *Callan v. Confed. of Oreg. Sch. Adm.*, 79 Or App 73, 78, n 3, 717 P2d 1252 (1986), that a plaintiff's *prima facie* burden in employment discrimination cases is "so minimal that it is virtually impervious to a motion based on evidentiary sufficiency." We concluded in *Hardie* that the plaintiff had presented sufficient evidence to present a triable issue of fact on whether she would have been treated differently had she not filed her workers' compensation claim. The evidence in *Hardie* consisted of the employer's notes concerning the plaintiff that addressed the subject of terminating her employment and also mentioned her workers' compensation claim.

■ In view of the standard discussed above, we conclude that plaintiff here presented evidence that, if believed, "could reasonably [have led] a fact-finder" to determine that the filing of plaintiff's workers' compensation claim was a "substantial factor" in his discharge. *Turnbow*, 155 Or App at 69. More specifically, we hold that a reasonable jury *could have* found that plaintiff's pursuit of the workers' compensation claim motivated defendants to fire him and that defendants would not have discharged him without that motive. Where, as here, the issue is the employer's motive for firing a worker, there rarely will be direct evidence of that motive and the effect that it had on the employer's action. *See Portland Assn. Teachers v. Mult. Sch. Dist. No. 1*, 171 Or App 616, 624, 16 P3d 1189 (2000). As a result, the factfinder's assessment of the employer's motive will often need to be based on inferences derived from the facts found. Because we review the evidence in the light most favorable to plaintiff, our inquiry consists of asking whether the facts that the jury reasonably could have found from the evidence in the record would reasonably permit the jury to infer that the employer would not have discharged plaintiff but for the filing of the workers' compensation claim.

Based on this record, we conclude that a jury reasonably could have found that defendants were hostile to plaintiff at the time that they discharged him and that that hostility was due to his having filed what they believed to be a

fraudulent workers' compensation claim. Accordingly, we conclude that a jury could reasonably have inferred that defendants' firing of plaintiff was motivated by its hostility toward him for having filed the claim.

We recognize that there is also significant evidence in the record that supports the arbitrator's and jury's determinations that defendants did not discharge plaintiff because he filed a workers' compensation claim. However, the question here is not how the jury did find the facts or how we might view the facts but what a reasonable factfinder *could have* found based on the evidence. Because, as discussed above, a reasonable factfinder *could have* believed plaintiff's version of the evidence and concluded that defendants did discharge plaintiff due to his filing of a workers' compensation claim, we conclude that plaintiff's claim was not frivolous, unreasonable, or without foundation. Accordingly, the trial court erred in so concluding and in basing its award of attorney fees on that determination.

■ In view of the above holding, we must address defendants' alternative argument that they were entitled by statute to at least a portion of their attorney fee award. Defendants argue that ORS 36.425(4)(a) mandates that, because plaintiff did not improve his position by proceeding to trial, defendants are entitled to $7,870 in attorney fees for work performed in the period following the arbitrator's decision. The pertinent statute, ORS 36.425(4)(a), provides:

> "If a party requests a trial de novo under the provisions of this section, the action is subject to arbitration under the provisions of ORS 36.405(1)(a), the party is entitled to attorney fees by law or contract, and the position of the party is not improved after judgment on the trial de novo, the party shall not be entitled to an award of attorney fees or costs and disbursements incurred by the party before the filing of the decision and award of the arbitrator, and shall be taxed the reasonable attorney fees and costs and disbursement incurred by the other parties to the action on the trial de novo after filing of the decision and award of the arbitrator."

ORS 36.425(4)(a) requires the trial court to award attorney fees to the nonappealing party when four criteria are met: (1) a party requests trial *de novo* after arbitration,

(2) the action was subject to arbitration under ORS 36.405(1)(a), (3) the party who requested trial *de novo* is entitled to attorney fees by law or contract, and (4) the party who requested trial *de novo* did not improve its position after the trial *de novo*. Here, it is undisputed that three of the criteria were met: plaintiff requested trial *de novo* after arbitration that was required under ORS 36.405(1)(a) and did not improve his position after the trial *de novo*. The parties dispute whether the remaining criterion—entitlement to attorney fees by law or contract—was present here.

Defendants contend that we should consider ORS 659A.885(1) to be a source of entitlement by law to attorney fees sufficient to satisfy ORS 36.425(4)(a). Plaintiff responds that defendants were not "entitled by law" to attorney fees under ORS 659A.885(1). First, plaintiff observes that prevailing defendants may be allowed attorney fees under that statute only if the plaintiff's claim was frivolous, unreasonable, or without foundation. Plaintiff also notes that ORS 659A.885(1) uses the discretionary verb "may." ("In any action under this subsection, the court *may* allow the prevailing party costs and reasonable attorney fees at trial and on appeal." ORS 659A.885(1) (emphasis added).)

The question, however, is not whether *defendants* were entitled by law to attorney fees by virtue of ORS 659A.885(1). Rather, it is whether *plaintiff*—the "party who request[ed] a trial de novo"—"is entitled to attorney fees by law or contract." ORS 36.425(4)(a) is essentially a reciprocity provision; to the extent that one party puts another party at risk for attorney fees by requesting a trial *de novo*, ORS 36.425(4)(a) exposes the appealing party to the same risk. Accordingly, defendants are entitled to attorney fees to the same extent that plaintiff would have been entitled attorney fees under ORS 659A.885 had he prevailed.

The parties do not dispute that, under ORS 659A.885(1), prevailing *plaintiffs* are entitled to attorney fees. As we noted in *Schlumberger*, 145 Or App at 21 n 9, "we have construed the apparently discretionary language of ORS [659A.885] to require an award of attorney fees to a prevailing plaintiff * * *." Although the issue in *McCarthy I* was whether a prevailing defendant was entitled to attorney fees,

the Supreme Court in that case approved of how we had construed ORS 659A.885(1) in *Schlumberger*. *McCarthy I*, 327 Or at 94. *See also Payne v. American-Strevell, Inc.*, 65 Or App 265, 267, 670 P2d 1065 (1983). Because plaintiff would have been entitled by law to attorney fees had he prevailed, the remaining criterion of ORS 36.425(4)(a) is satisfied, and defendants are entitled to the attorney fees that they incurred after the arbitrator's decision was filed. Plaintiff did not object to the amount of that portion of the award. Accordingly, defendants are entitled to the $7,870 in attorney fees that they incurred after the arbitrator's decision.

Judgment modified to reduce attorney fees awarded to defendants to $7,870; otherwise affirmed.