**STELLAR J CORPORATION, a Texas corporation, Plaintiff,**

v.

**SMITH & LOVELESS, INC., a Kansas corporation, Defendant.**

City of Rainier, for the use and benefit of Smith & Loveless, Inc., and Smith & Loveless, Inc., a Kansas corporation, Counterclaimants,

v.

Stellar J Corporation, a Texas corporation, and Travelers Casualty and Surety Company of America, an insurance company, Counterdefendants.

No. 09–CV–353–JE.

United States District Court,
D. Oregon,
Portland Division.

Aug. 5, 2010.

Albert F. Schlotfeldt, Duggan Schlotfeldt & Welch, Vancouver, WA, for Plaintiff Stellar J Corporation and Counterdefendants Stellar J Corporation and Travelers Casualty and Surety Company of America.

Guy A. Randles, Sean C. Gay, Stoel Rives LLP, Portland, OR, Dan C. Sanders, Monaco Sanders Gotfredson Racine & Barber, L.C., Kansas City, MO, for Defendant/Counterclaimant Smith & Loveless, Inc.

## ORDER

BROWN, District Judge.

Magistrate Judge John Jelderks issued Findings and Recommendation (# 48) on May 11, 2010, in which he recommends the Court grant the Motion (# 21) for Partial Summary Judgment of Stellar J Corporation and Travelers Casualty and Surety Company of America. Smith & Loveless, Inc., filed timely Objections to the Findings and Recommendation. The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1). *See also United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003) (*en banc*); *United States v. Bernhardt,* 840 F.2d 1441, 1444 (9th Cir. 1988).

In its Objections, Smith & Loveless reiterates the arguments contained in its Response to the Motion for Partial Summary Judgment of Stellar J Corporation. The Magistrate Judge thoroughly addressed Smith and Loveless's arguments in his Findings and Recommendation. This Court also has carefully considered Smith and Loveless's Objections and concludes they do not provide a basis to modify the Findings and Recommendation. The Court also has reviewed the pertinent portions of the record *de novo* and does not find any error in the Magistrate Judge's Findings and Recommendation.

### CONCLUSION

The Court **ADOPTS** Magistrate Judge Jelderks's Findings and Recommendation (# 48) and, accordingly, **GRANTS** the Motion (# 21) for Partial Summary Judgment of Stellar J Corporation and Travelers Casualty and Surety Company of America.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

JOHN JELDERKS, United States Magistrate Judge:

Plaintiff Stellar J Corporation (Stellar) brings this construction related action against Smith & Loveless, Inc. (Smith). Smith asserts counterclaims, and asserts third-party claims against Travelers Casualty and Surety Company of America (Travelers).

Plaintiff Stellar and third-party defendant Travelers move for a partial summary judgment establishing that they are entitled to prevail on defendant Smith's counterclaim against Stellar and third-party claim against Travelers on the grounds that Smith was not licensed by the Oregon Construction Contractors Board when it performed the work that is subject to this dispute.

For the reasons set out below, the motion should be granted.

### Background

This action arises from a contract between plaintiff Stellar and defendant Smith for the purchase and installation of equipment for use in a wastewater treatment improvement project (the Project) in the City of Rainier, Oregon (Rainier).

Stellar is a Texas corporation whose principal place of business is located in Woodland, Washington. Smith is a Kansas corporation whose principal place of business is located in Lenexa, Kansas.

Plaintiff Stellar subcontracted with Rainier for the construction of certain improvements in Rainier's waste treatment plant. On March 28, 2008, Stellar and Smith entered into a contract under which Smith agreed to fabricate and install certain equipment on the Project. Defendant Smith agreed to build and supply a Biological Wastewater Treatment Unit and Aeration Diffuser System (New Wastewater Unit) for the sum of $506,250, and to provide additional wastewater treatment equipment (Retrofit Equipment) for the sum of $256,400. Smith agreed to install the Wastewater Treatment Unit for the sum of $168,750. Smith, in turn, subcontracted with DC Design and Construction, Inc., a licensed Oregon contractor, for installation of the New Wastewater Unit.

When Stellar and Smith entered into their subcontract, and while it worked pursuant to that agreement, Smith did not have an Oregon Contractor's license. On March 28, 2008, Smith faxed Stellar a copy of the subcontract agreement that included a copy of page 7 which had not been filled out. On April 2, 2008, Stellar faxed Smith a copy of page 7, and asked Smith to complete and return the form. On April 24, 2008, Smith faxed a copy of page 7 back to Stellar. On a line on that page which asked for Smith's Oregon Contractor's license number, Smith placed the notation "N/A."

At some point during the Project, Stellar terminated the parties' subcontract agreement. As noted above, the subcontract between Stellar and Smith provided that Smith would be paid $506,250 for the New Wastewater Unit, $168,750 for the erection and installation of the New Wastewater Unit, and $256,400 for the Retrofit Equipment. Smith asserts Stellar still owes it $73,406.25 for the New Wastewater Unit, $148,118.75 for installation of that unit, and the entire $256,400 contract price of the Retrofit Equipment.

Pursuant to the terms of a Payment Bond, third-party defendant Travelers agreed to pay on behalf of Stellar, as principal, and Rainier, as obligee, any supplier of labor, material, or equipment for the Project whom Stellar failed to pay.

In the present action, plaintiff Stellar alleges that defendant Smith breached the terms of the parties' subcontract agreement by failing to timely and diligently perform the services it was required to provide, failing to ever provide the Retrofit Unit, and failing to "cure its defaults." Stellar seeks recovery of damages "in an amount not less than $300,000." In its counterclaims against Stellar, Smith alleges that Stellar breached the subcontract by failing to give it the required "notice of correction" and providing it a reasonable opportunity to cure before terminating the subcontract agreement. Smith brings claims for breach of contract and "Quantum Meruit/Unjust Enrichment" against Stellar, and seeks recovery of $477,924.62 in damages. In a third counterclaim captioned "Action on Payment Bond," brought against both Stellar and third-party defendant Travelers, Smith seeks recovery of that amount from Stellar and Travelers pursuant to a Payment Bond guaranteeing payment to "all persons supplying labor and material" in the event that Stellar or a subcontractor failed to make required payments.

In their answer to defendant Smith's counterclaims, filed on April 30, 2009, plaintiff Stellar and third-party defendant Travelers asserted an affirmative defense based upon plaintiff's failure to obtain an Oregon Contractor's license. These parties asserted that Smith's "counterclaims are barred pursuant to ORS 701.131 as Defendant was a contractor under Oregon law at all times material hereto and Defendant failed to register and obtain the license necessary for defendant to be entitled to bring its counterclaims...."

On May 26, 2009, the Oregon Contractors Board received Smith's application for an Oregon Contractor's license. The Board issued Smith a license on July 2, 2009.

Smith filed its First Amended Answer, Affirmative Defenses and Counterclaims on November 18, 2009, after it had obtained its Oregon Contractor's license. In their response to Smith's amended pleadings, Stellar and Travelers again asserted that Smith's failure to register as an Oregon contractor and failure to have a Contractor's license "at all times material" bar Smith's claims against these parties. The present motion for partial summary judgment is based upon this assertion.

### Standards for Evaluating Motions for Summary Judgment

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. *Id.* When the moving party shows the absence of an issue of material fact, the nonmoving party

must go beyond the pleadings and show that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. *Id.* at 630–31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1985). No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### Discussion

I. *Unlicensed Contractor Defense*

Stellar and Travelers contend that Smith's counterclaims are barred because Smith did not have an Oregon Contractor's license when it submitted a bid for work on the project, entered into a contract for the work, performed and subcontracted work under the project, and asserted its counterclaims. Their assertion of this "unlicensed contractor defense" is based upon Or. Rev. Stat. § 701.131. This statute provides, in relevant part, that:

(1) Except as provided in subsection (2) of this section, a contractor may not perfect a construction lien, file a complaint with the Construction Contractors Board or commence an arbitration or court action for compensation for the performance of any work or for the breach of any contract for work that is subject to this chapter unless the contractor had a valid license issued by the board:

(a) at the time the contractor bid or entered into the contract for performance of the work; and

(b) Continuously while performing the work for which compensation is sought.

(2) The board, arbitrator or court may not apply the provisions of subsection (1) of this section to a contractor if the board, arbitrator or court determines that:

(a) The contractor either did not have a valid license at any time required under subsection (1) of this section, or had an initial issuance of a valid license, and:

(A) The contractor was not aware of the requirement that the contractor be licensed, and the contractor submitted a completed application for a license within a number of days established by the board, but not more than 90 days, of the date the contractor became aware of the requirement;

(B) At the time the contractor perfected the construction lien or commenced any proceeding subject to the provisions of subsection (1) of this section, the contractor was licensed by the board; and

(C) Enforcement of the provisions of subsection (1) of this section would result in substantial injustice to the contractor....

Subsection (2)(b) applies if the contractor was licensed for some but not all of the times required by Or. Rev.Stat. § 701.131(1), and the license lapsed, but was renewed within specified time limits.

Subsection (2)(c) applies these same exceptions where "[t]he contractor is a licensed developer...." A developer is defined as a contractor that owns or has an interest in property on which the contractor is arranging to have work performed

or is performing other activities associated with improvement of real property with the intent to sell the property.

The last exception is set out at subsection 2(d), which precludes application of the "unlicensed contractor defense" where "the proceeding"

(A) Is directed against a person or entity that:

\* \* \*

(ii) Provides construction or design labor or services of any kind; or

(iii) Manufactures, distributes, rents or otherwise provides materials, supplies, equipment, systems or products; and

(B) Arises out of defects, deficiencies or inadequate performance in the construction, design, labor, services, materials, supplies, equipment, systems or product provided.

Under Or. Rev. Stat. § 701.005(5)(a), a "contractor" is defined as

A person who, for compensation or with the intent to sell, arranges or undertakes or offers to undertake or submits a bid to construct, alter, repair, add to, subtract from, improve, inspect, move, wreck or demolish, for another, any building, highway, road, railroad, excavation or other structure, project, development or improvement attached to real estate, or to clean or service chimneys, or to do any part thereof.

Under OAR § 812–002–0760(1), construction work is defined as

construction, alteration, repair, improvement, inspection, set-up, erection, moving or demolition of a structure or any other improvement to real estate, including activities performed on-site in the normal course of construction, or receiving and accepting any payments for the above.

*Analysis*

Stellar and Travelers contend that none of these exceptions apply. Smith contends that the exceptions set out in Subsections (2)(a) and (2)(d) apply.

Before considering these subsections, I will briefly summarize the relevant factual record. Defendant Smith did not have an Oregon Contractor's License when it entered into a contract with Stellar on March 28, 2008, under which it agreed to fabricate and install certain equipment on the Project. Page 7 of the subcontract agreement that Smith faxed to Stellar that day had not been filled out. On April 2, 2008, Stellar faxed Smith a copy of page 7, which it asked Smith to complete and return. Page 7 included a line for listing Smith's Oregon State Contractor's License number. That line was left blank. Smith inserted the notation "N/A" in that line on the copy of page 7 that it faxed back to Stellar.

On February 26, 2009, plaintiff Stellar brought this action against Smith in the Columbia County Circuit Court. Smith removed the action to this court on April 6, 2009. On April 10, 2009, it filed an answer and asserted counterclaims against Stellar and third-party claims against Travelers. In their answer to defendant Smith's counterclaims and third-party claims, filed on April 30, 2009, plaintiff Stellar and third-party defendant Travelers asserted an affirmative defense based upon plaintiff's failure to obtain an Oregon Contractor's license.

On May 26, 2009, the Oregon Contractors Board received Smith's application for an Oregon Contractor's license. The Board issued Smith a license on July 2, 2009. Smith filed its First Amended Answer, Affirmative Defenses and Counterclaims on November 18, 2009, after it had obtained its Oregon Contractor's license.

## A. *Applicability of § 701.131(2)(a)*

As noted above, § 701.131(1) states that, except as provided in subsection (2), a contractor may not commence a "court action" for compensation for work performed, or for breach of contract for work for which a contractor's license is required, unless the contractor had a valid Oregon contractor's license when the contract was concluded and when the work for which compensation is sought was performed. Because mere is no question that Smith did not have an Oregon contractor's license at either of those times, Smith's claims against Stellar and Travelers are barred unless one of the exceptions set out in § 701.131(2) applies.

To again briefly summarize, subsection 2(a) applies where three requirements are satisfied: (1) the contractor was unaware of the license requirement and submitted an application for a license within 90 days of becoming aware of the license requirement; (2) at the time the contractor "commenced any proceeding" to recover compensation or for breach of contract, including a "court action," the contractor was licensed; and (3) enforcement of the contractor's license requirement would result in "substantial injustice."

 Here, there are at least arguably issues of fact as to the first and third of these requirements. Perhaps Smith could establish that, when it inserted the notation "N/A" on page 7 of the form that it faxed to Stellar, it was, reasonably, unaware the it needed an Oregon contractor's license. Likewise, Smith might be able to establish that enforcement of the contractor's license requirement would result in "substantial injustice," because it would be deprived of compensation for work that it performed. However, Smith cannot satisfy the second of these requirements, that a license be issued before a "proceeding" to recover on its claims had been commenced. Smith first asserted its claims against Stellar and Travelers on April 10, 2009, when it included them in the "Answer, Affirmative Defenses and Counterclaims" that it filed. It did not obtain a contractor's license until My 2, 2009.

Smith contends that the requirement that a contractor have a license before it has "commenced any proceeding" is satisfied because its amended counterclaims, which were filed after it obtained a license "replace in their entirety the original counterclaims filed on April 10, 2009 . . . ." This argument, logically, must fail. Under the plain terms of § 701.131(2)(a), a proceeding to recover for work to which the license requirement applies is "commenced" by a plaintiff when a complaint is first filed, and is "commenced" by a defendant when an answer asserting counterclaims is filed. *See* Or. R. Civ. P. 3 (action "shall be commenced by filing a complaint"). Smith "commenced" proceedings on its counterclaims and third-party claims on April 10, 2009, when it filed its answer. There is no question that Smith was unlicensed at that time.

Smith contends that it is "in substantial compliance with the second prong of O.R.S. 701.131(2)(a) because its amended counterclaims replaced the original counterclaims 'in their entirety . . . .' " I disagree for several reasons. As the court observed in *Parthenon Const. v. Neuman,* 166 Or.App. 172, 180, 999 P.2d 1169 (2000), there is no suggestion in the relevant statutes that " 'the registration requirements, or the consequences of nonregistration, are somehow qualified by notions of substantial compliance.' " A plaintiff's amendment of a claim asserted in an original complaint does not alter the date upon which the proceedings to recover under the claim was commenced. Similarly, a defendant/third-party's amendment of a counterclaim or third-party

claim does not alter the time at which the proceeding to recover on the counterclaim or third-party claim was commenced. Stellar and Travelers correctly note that a construction of § 701.131 under which a proceeding to recover commenced anew upon each amendment would effectively eliminate the unlicensed contractor defense, because a contractor who was unaware of the licensing requirement before bringing an action could avoid the defense raised as an affirmative defense by simply amending its claim after obtaining a license. Stellar and Travelers also correctly note that Oregon rules of statutory construction require that, where possible, courts give effect to each provision of a statute. Or. Rev. Stat. § 174.010. Construing § 701.131(2)(a) in a manner that allowed a contractor to avoid the unlicensed contractor defense by amending a pleading after obtaining a license would be inconsistent with that requirement.

B. *Applicability of § 701.131(2)(d)*

As noted above, this exception applies where a "proceeding" is brought against a contractor who provides construction or design labor or services or "manufactures, distributes, rents or otherwise provides materials, supplies, equipment, systems, or products," and the proceeding "arises out of defects, deficiencies, or inadequate performance in the construction, design, labor, services, materials, supplies, equipment, systems or products provided."

■■■ Smith contends that this exception applies because it is a contractor, and Stellar's claims against it are based upon alleged delays in installation and failure to timely provide labor, materials, and equipment required for the Project. This argument fails for at least three reasons. First, as Stellar correctly notes, § 701.131(2)(d) applies to construction defects, and was enacted to protect consumers who have contracted with unlicensed

contractors and are damaged because of defective goods or services provided by the unlicensed contractor's vendors or subcontractors. *See.* Eric A. Grasberger, *Contractor and Subcontractor Licensing and Registration,* 1 Construction Law § 1.28. This subsection is intended to "avoid situations in which the damages caused by construction defects exceed the amount of insurance otherwise available from those parties who have contributed to the defects but who avoided liability simply because the party with whom they contracted was not licensed." *Id.* There is no support for the conclusion that this subsection applies where, as here, an unlicensed contractor seeks damages from another contractor.

This subsection is also inapplicable because, for the purposes of applying § 701.121(2)(d), the "proceeding" in question is not Stellar's assertion of certain claims against Smith, but instead is Smith's assertion of counterclaims against Stellar and third-party claims against Travelers. Smith's counterclaims and third-party claims are not based upon alleged construction defects or deficiencies, but instead are based upon breach of contract, quantum meruit, and an action on a payment bond. Smith's claims against Travelers do not satisfy the exception for the additional reason that Travelers is not a contractor within the meaning of applicable statutes, and the exception applies only to proceedings brought against contractors.

Finally, this exception does not apply because, as Stellar and Travelers contend, its application under these circumstances would "swallow the rule." Plaintiff's and Counterdefendant's Reply at 3. As these parties correctly note, under Smith's interpretation of this subsection, the licensing requirement would be eliminated any time a contractor brought a claim against an-

other contractor. There is no support for the conclusion that the subsection was intended to have this vast reach.

## II. *Smith's Other Contentions*

Smith also contends that material issues of fact exist as to whether it is a "contractor" within the meaning of applicable Oregon law, that Stellar and Traveler should be estopped from raising the contractor's license defense, and that, as an alternative to eliminating its counterclaims, the court should allow it to dismiss without prejudice and refile its counterclaim and third-party claim, thereby resolving any "lingering doubt" as to whether it had a license when the claims were brought. Smith also contends, in the alternative, that the rule is not applicable as to its claims relating to "the manufacture and sale of equipment."

### A. *Whether Smith is a "contractor" within the meaning of applicable statutory provisions*

Smith contends that the motion for partial summary judgment should be denied because material issues of fact exist as to whether it is a "contractor" for purposes of § 701.131. It contends that its status as a contractor is uncertain because the subcontract agreement "was predominantly for the manufacture and sale of equipment, and the installed equipment is removable." Defendant's mem. in opp. to mot. for partial sum. jud. at 18. Smith asserts that the "New Treatment Unit" was installed inside concrete tanks that Stellar poured and erected, and had an electrical hook-up that was installed by a separate subcontractor. *Id.* It further asserts that this unit "can be removed from the concrete tank if so desired by the City of Rainer," and argues that a "technical question" as to whether or not the unit is "attached to real estate" precludes partial summary judgment.

■ These arguments fail. As noted above, under Or. Rev. Stat. § 701.005(5)(a), a contractor is defined as

A person who, for compensation or with the intent to sell, arranges or undertakes or offers to undertake or submits a bid to construct, alter, repair, add to, subtract from, improve, inspect, move, wreck or demolish, for another, any building, highway, road, railroad, excavation or other structure, project, development or improvement attached to real estate, or to clean or service chimneys, or to do any part thereof.

Here, there is no question that Smith submitted a bid as a subcontractor for the Project and entered into a contract requiring it to manufacture, supply, erect, and install substantial pieces of equipment for compensation. There is no question that Smith contracted to furnish and install equipment inside concrete tanks that Stellar poured and erected. This rendered Smith a "contractor" within the meaning of Oregon law. *See L.H. Morris Electric, Inc. v. Hyundai Semiconductor America,* 187 Or.App. 32, 38–39, 66 P.3d 509 (2003) (question of party's status as "contractor" depends on whether equipment in question was attached to real property). There is likewise no question that, after Stellar and Travelers asserted an affirmative "unlicensed contractor" defense, Smith applied for and was granted an Oregon *Contractor's* license. Further, the agreement between Stellar and Smith repeatedly refers to Smith as a subcontractor. Under these circumstances, there is no question that Smith meets the definition of a "contractor" for the purposes of relevant Oregon statutes.

### B. *Whether Stellar is estopped from asserting unlicensed contractor affirmative defense*

Smith contends that Stellar should be estopped from asserting the unlicensed

contractor defense because it knew that Smith was not a licensed Oregon contractor, and had an obligation under Oregon law not to hire an unlicensed contractor. This contention is based upon Stellar's receipt of Smith's notation of "N/A" in response to request for its contractor number on page 7 of the subcontract agreement, and Or. Rev.Stat. § 701.026, which prohibits a contractor from hiring an unlicensed contractor to perform work for which a contractor's license is required.

■ In order for equitable estoppel to apply, the following requirements must be met:

(1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it.

*Bennett v. City of Salem*, 192 Or. 531, 541, 235 P.2d 772 (1951).

■ The requirements for the application of estoppel are not satisfied here. Smith has not shown the existence of evidence from which a reasonable trier of fact could conclude that Stellar falsely represented that Smith did not need a contractor's license, and did so with the intent that Smith not obtain the license that would have allowed it to pursue its counterclaims against Stellar and Travelers, and induced Smith not to obtain a license. To the contrary, Stellar sent Smith a request for information about a contractor's license that at the least would have put Smith on notice that such a license might be required.

C. *Effect of "severability clause" in paragraph 24 of the subcontract agreement*

Smith contends that, even if the unlicensed contractor rule applies to some of its claims, it should not apply to its claims "regarding the manufacture and sale of equipment." Def. mem. in opp. to mot. for sum. jud. at 17. Smith notes that the subcontract agreement separately itemized the pricing for the sale of the New Treatment Unit and Retrofit Equipment and the cost of installing the New Treatment Unit. It asserts that its sale of the New Treatment Unit and the Retrofit Equipment "is not an activity that would otherwise qualify" it "as a 'contractor' under ORS 701.005(5) or make" its "payment claims against Stellar J subject to ORS 701.131." *Id.* In support of this contention, Smith notes that paragraph 24 of the parties' subcontract agreement includes a "Partial Invalidity" clause stating that, if any provisions of the agreement are held to be invalid, illegal, or unenforceable in any respect, this shall not affect any other provisions "and this agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained therein." Smith argues that, even if the unlicensed contractor defense is found to otherwise apply, it is nevertheless entitled to proceed with its counterclaims seeking payment of the $73,406.25 that it alleges it is owed from the sale of the New Treatment Unit and the $256,400 that it alleges it is owed from the sale of the Retrofit Equipment "which involves the manufacture and sale of equipment only." Under this approach, only Smith's claim for $148,118.75 allegedly owed on the installation of the New Treatment Plant would be barred by the licensing requirement.

■ I disagree with Smith's contention that the unlicensed contractor defense applies only to certain of its claims. Smith clearly qualifies as a contractor under the terms of Or. Rev.Stat. § 701.005(5), and the subcontract agreement defines the scope of Smith's work broadly, as includ-

ing, but not limited to "all Supervision, Prevailing Wage Labor, Equipment, Tools, Materials, Submittals, Permits, Fees, Testing, Training, warranty, and Operation and Maintenance Manuals necessary to furnish and install Biological treatment Unit and Aeration in accordance with the contract documents, specification, drawings, and addenda. . . ." All of the work that Smith was obligated to perform under the subcontract agreement constituted work as a "contractor" within the meaning of relevant Oregon statutes, and there is no principled basis for severing the work in the manner proposed by Smith. In agreeing to "construct" the equipment in question, which was intended to be attached to real estate, Smith agreed to function as a contractor. There is no basis for separating that work from the other work it agreed to perform on the Project.

### D. *Smith's request to dismiss and refile its counterclaims and third-party claims*

To the extent that the court finds that it does not qualify for an exception to the unlicensed contractor defense, Smith asserts that it should be granted leave to dismiss its counterclaims and third-party claims without prejudice, and "simultaneously re-file these counterclaims." *Id.* at 16, 235 P.2d 772. It asserts that it had no choice but to file its "compulsory counterclaims" before it could obtain a contractor's license, and should not be denied access to the relief offered under § 701.131(2)(a). Alternatively, Smith asserts that it should be allowed to dismiss these claims without prejudice, and file these claims in a separate action which could then be consolidated with the present action.

■ Stellar and Travelers contend that in allowing Smith to dismiss its claims without prejudice and re-file, the court would impermissibly "use federal procedural law to trump state substantive law." I agree. Section 701.131(2)(a) is a substantive Oregon law which provides a specific and narrow exception to the general statutory bar against actions brought by unlicensed contractors to recover for work for which a license is required. Allowing Smith to dismiss and re-file its claims would effectively eliminate the requirement, set out in § 701.131(2)(a), that an unlicensed contractor obtain a contractor's license *before* bringing an action to recover for work for which a license was required. This is not proper because, though a federal court sitting in diversity applies federal procedural law, it must apply state substantive law. *See Clausen v. M/V New Carissa,* 339 F.3d 1049, 1064–65 (9th Cir. 2003).

### *Conclusion*

The motion for partial summary judgment brought by Stellar and Travelers (# 21) should be GRANTED.

### *Scheduling Order*

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due June 1, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.